STATE of Missouri, Respondent,

v.

Jerome C. SMITH, Appellant.

No. 35514.

Missouri Court of Appeals, St. Louis District.

Jan. 21, 1975.

Charles D. Kitchin, Public Defender, John D. Bauer, James C. Jones, Christelle Adler, Asst. Public Defenders, St. Louis, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Ellen S. Roper, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., John F. White, Asst. Circuit Atty., St. Louis, for respondent.

KELLY, Judge.

Defendant was convicted of murder in the second degree on May 23, 1973 and the trial court assessed a sentence of 25 years in the Missouri Department of Corrections on the following day, May 24, 1973, and

granted his counsel an additional 10 days to file a Motion for New Trial. On June 13, 1973, defendant's counsel filed a Motion for New Trial and on June 15, 1973, the motion was argued, allocution was afforded the defendant, and the trial court sentenced him to confinement in the Department of Corrections for a period of 25 years. Immediately thereafter defendant's motion to appeal as a poor person was sustained and this appeal followed.

■■ The State in its brief points out that the verdict in this case was returned on May 23, 1973 and that the defendant was granted an additional ten (10) days to file his motion for new trial; however, since defendant did not file his motion for new trial until June 13, 1973, the State contends that nothing was preserved for this court to review. Rule 27.20(a) and Rule 31.01, V.A.M.R. The law in this State is clear that the rule requiring that a motion for new trial must be filed within 10 days after return of verdict is mandatory and where a motion for new trial is not filed in conformity with the Rule it is a nullity and preserves nothing for review. State v. Clark, 432 S.W.2d 279, 281 [1, 2] (Mo.1968). The transcript of the record shows that the jury returned its verdict into the trial court at 6:45 p. m. on May 23, 1973, and after the trial court received the verdict and polled the jury, a recess until 9:15 a. m. the following morning was announced and both counsel were advised that at that time assessment of punishment would take place. On May 24, 1973, after the court reconvened, after some discussion the punishment was assessed at 25 years in the Missouri Department of Corrections. The trial court stated: "I assume, Mr. Bauer, you'll be able to get your Motion for a New Trial in within ten days?" Counsel replied that he had two other major motions coming up and requested an additional ten days. The trial court announced: "The court will grant you an additional 10 days. Give the Clerk a memorandum to that effect." Calculating the extension granted in accord with Rule 31.-01, if the trial court granted the additional 10 days from the date of the receipt of verdict, the motion for new trial was due to be filed on June 12, 1973, and was late when filed on June 13, 1973. If, however, the trial court meant an additional ten days computed from the time the request was granted, then the motion was timely filed. No date was specified in the order. The trial court pursuant to Rule 27.20(a) may grant an extension of time for the filing of a motion for new trial for an additional period of thirty (30) days, a total of forty (40) days after verdict. The trial court entertained the motion for new trial but made no definitive ruling thereon; after hearing argument he immediately granted allocution and imposed sentence in accordance with the assessment previously announced on May 24, 1973. There was no ruling at that time that he considered the motion untimely filed. With the record in this condition we do not conclude that we should find otherwise and proceed to consider the Points raised by the defendant in this appeal.

On appeal defendant contends that the trial court erred in failing to give an instruction on Manslaughter, in giving and reading to the jury Instruction No. 4—the verdict director with respect to murder in the second degree—because it did not require a finding that the homicide was done feloniously, willfully, premeditatedly and with malice aforethought, and the same Instruction was erroneous because if the jury found and believed from the evidence beyond a reasonable doubt each and every element set out therein they would have had to find the defendant guilty of manslaughter and not murder in the second degree. Because we agree with defendant's contention that he was, under the facts of this case, entitled to a manslaughter instruction we reverse and remand.

The defendant was charged in a substitute information in lieu of indictment with the offense of attempted robbery in the first degree by means of a dangerous and deadly weapon in Count I thereof and with

murder in the first degree in Count II thereof. The information likewise contained allegations of a prior felony conviction pursuant to the Second Offender Act, § 556.280 V.A.M.S.

The defendant does not dispute that the facts support the jury's verdict, and the jury could, and did, find that shortly prior to midnight on July 20, 1972, the defendant entered Lou Jones' Liquor Store in the City of St. Louis, Missouri, and asked Norman Anderson, an employee of the liquor store, for some candy and potato chips, then pulled a pistol and announced "This is it." Lou Jones, the owner of the liquor store, who was sitting nearby, stood and approached the defendant after defendant had ordered him to do so, and defendant proceeded to pat-down Mr. Jones apparently in an effort to determine if Mr. Jones was armed. Mr. Jones attempted to grab defendant's arm whereupon the defendant fired at Jones. Jones then took his own gun out of a cigar box he was carrying and returned the fire. Mr. Anderson ran to the back of the store, heard several more shots and when he returned to the front of the store he saw Mr. Jones fall to the floor and the defendant was gone from the scene. Defendant was picked up by the St. Louis Police several blocks from the scene shortly after the shooting.

Defendant testified in his own behalf, and his testimony was that he was employed as a private security guard and on the night in question he was patrolling the area in the neighborhood of the liquor store. He admitted that although he was not licensed to carry a gun he did so and had one on him at the time. He further testified that it was the policy of the security service for whom he worked to permit its guards to drink liquor while on duty as long as they did not do so while in uniform. On the night of the incident defendant decided to get something to drink and preparatory to entering the liquor store he removed his uniform hat, shirt, night stick and time clock and left them in an alley. He did, however, keep his gun on him. He entered the liquor store and asked for candy and potato chips and inquired as to the price of a bottle of wine. The pistol, because of its length, protruded from his pocket and when he tried to push it further into his pocket Mr. Jones observed him, shouted to the defendant that he, the defendant, was going to rob him, Mr. Jones, and pulled his own weapon out and pointed it at the defendant. The defendant tried to push Mr. Jones' gun away but it discharged, wounding the defendant in his hand. Mr. Jones continued firing at defendant, hitting him four times, and defendant thereupon returned the fire, killing Mr. Jones.

The police officers found a watchman's time clock, hat, belt with night stick holder and flashlight in a nearby alley. Blood stains were also observed in the vicinity.

The cause was submitted to the jury with instructions on attempted robbery in the first degree by means of a dangerous and deadly weapon in Count I and felony murder, murder in the first degree, and murder in the second degree in Count II of the amended information in lieu of indictment. The trial court also submitted to the jury instructions on justifiable homicide. After deliberating the jury returned a verdict of not guilty of attempted robbery in the first degree by means of a dangerous and deadly weapon as charged in Count I of the information and guilty of murder in the second degree under Count II of the information.

■ It has been the law in this state for many years that a manslaughter instruction must be given, whether requested or not, unless "there is an entire absence of evidence upon which to rest a verdict of guilty of manslaughter." State v. Jackson, 496 S.W.2d 1 (Mo. banc, 1973). If the evidence in the case is such that it will support either second degree murder or manslaughter it is the duty of the trial court to instruct on both and leave to the jury the fact question whether the defend-

ant acted with premeditation and malice. State v. Ayers, 470 S.W.2d 534 (Mo. banc 1971); State v. Hyster, 504 S.W.2d 90 (Mo.1974). The same evidence may, depending upon its interpretation by the trier of fact, lead to a determination of degree of the offense, i. e., whether it is murder in the first degree, murder in the second degree or manslaughter, and appropriate instructions submitting to the jury those degrees of homicide must be given. State v. Tinson, 461 S.W.2d 764 (Mo.1970.)

█ █ The jury is not obliged to accept the version of the facts presented by the witnesses on behalf of the prosecution but may give credence to the testimony of the defendant and in considering what instructions must be submitted to the jury the defendant is entitled to the benefit of the evidence and the inferences which may logically flow therefrom which are relevant to the degree of the offense to be considered by the jury. State v. Taylor, 309 S.W.2d 621 (Mo.1958).

Manslaughter is defined as "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide . . . " § 559.070 R.S.Mo., 1969. Judicial interpretation has further defined the offense and set out its elements. In State v. Sturdivan, 497 S.W. 2d 139, 142 (Mo.1973) the court said:

"Manslaughter is the intentional killing of a human being in *heat of passion, on reasonable provocation, without malice and premeditation* . . . Where there is evidence of an assault or violence inflicted upon the slayer by the deceased, an instruction on manslaughter should be given . . . and there need not be proof of an absence of premeditation and malice in order to instruct on manslaughter." (Emphasis supplied).

█ █ Manslaughter is the killing of a human being without deliberation, premeditation and malice, but which is intentional, unjustifiable and inexcusable. State v. Ayers, 470 S.W.2d 534, 537[7] (Mo. banc 1971). In State v. Williams, 442 S.W.2d 61 (Mo. banc 1968) (Overruled on other grounds in Ayers, *supra*) it was held that the sudden, unexpected firing of a gun at the defendant, despite the failure of the bullet to strike the defendant, was sufficient provocation to warrant a manslaughter instruction where the defendant returned the gun fire, killing the aggressor. The court said, l.c. 64: "From the facts supported by substantial evidence, the jury could find that when Matthews (the victim) suddenly shot at defendant at close range without warning, defendant's firing back was without malice, and certainly without deliberation." Even where the evidence permits inferences of premeditation and malice necessary to support a conviction for murder as well as excusable or justifiable homicide in self defense, where, as here, there are circumstances which do not preclude the inference of an absence of premeditation and malice and the finding of provocation an instruction on manslaughter is warranted. State v. Tinson, 461 S.W.2d 764, 767[1] (Mo.1970).

Respondent contends that the facts fail to support a finding of provocation sufficient to warrant an instruction on manslaughter. In support of this argument several cases are cited, among which are State v. Jackson, 496 S.W.2d 1 (Mo. banc 1973), State v. Sturdivan, 497 S.W.2d 139 (Mo.1973), State v. Clough, 327 Mo. 700, 38 S.W.2d 36 (1931). We conclude that the facts in the present case distinguish it.

█ We conclude that there is evidence to support a manslaughter instruction. Defendant testified that he went into the liquor store for a lawful purpose, i. e. to purchase some candy and potato chips and to inquire of the price of a bottle of wine; a gun was pulled on him and he only discharged his weapon after he had been fired upon by Mr. Jones, who misunderstood his reason for being in the store. The attack on himself was totally unexpected. In view of this evidence a jury

could find that the series of events which took place in the liquor store were of such a sudden and unexpected nature that the defendant acted in the heat of passion and upon provocation. The jury voted acquittal of the defendant on the charge of attempted robbery in the first degree by means of a dangerous and deadly weapon, and although permitted to consider whether he was guilty of felony murder and murder in the first degree, convicted him of murder in the second degree. Whether the defendant was the aggressor or the victim of an unexpected shooting by the victim and resultant provocation is a question which the jury had a right to consider.

We need not consider the other Points raised by the defendant in this appeal since they will not recur in the new trial where the instructions in MAI-CR will be appropriate.

Because of the failure of the trial court to submit to the jury a manslaughter instruction the cause is reversed and remanded to the trial court for further proceedings.

DOWD, C. J., and WEIER, J., concur.