STATE of Missouri,
Plaintiff-Respondent,

v.

McKinley ROBINSON,
Defendant-Appellant.

No. 40442.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 13, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 16, 1980.

John T. McCaffrey, Robert J. Thomas, Jr., St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

McKinley Robinson appeals from a trial court judgment rendered pursuant to a jury verdict finding him guilty of first degree murder in violation of § 559.007, RSMo Supp.1975 and sentencing him to life imprisonment.

Appellant contends that the trial court erred in failing to submit an instruction to the jury for the lesser but included offense of Manslaughter: Other than by Culpable Negligence, MAI–CR 6.08. Appellant also challenges the sufficiency of the evidence to sustain his conviction.

The jury could have found the following facts: At approximately 4:35 p. m. on New Years Eve, December 31, 1976, Harry J. Shelton, Jr. (the victim) and James Allen were preparing to leave the Gruendler Crusher and Pulverizing Co., their place of employment located at 2915 North Market in the City of St. Louis. Apparently Mr. Shelton had forgotten something and went back into the building to retrieve it. As Mr. Allen left, he noticed that only Mr. Shelton's 1973 blue Chrysler remained in the company parking lot and that the gate to the lot was standing wide open.

Approximately fifteen minutes later, Officer Timothy O'Brien was dispatched to the address to investigate a possible shooting. An "assist" car and ambulance were dispatched simultaneously. Upon arriving at the scene, Officer O'Brien discovered Mr. Shelton's prostrate body laying on the sidewalk. It was not immediately obvious to Officer O'Brien that Mr. Shelton was a shooting victim as there were no signs of either a struggle or blood. Officer O'Brien thought the man might have had heart trouble. The ambulance arrived and Mr. Shelton was taken to a hospital where he was pronounced dead on arrival. Officer O'Brien accompanied the ambulance to the hospital and there first learned that the victim had been shot.

At 5:05 p. m. that same afternoon, Officer James Lawrence followed a blue Chrysler south on Broadway. The Chrysler began to pick up speed. Officer Lawrence turned on his light and siren and a high-speed chase ensued. The chase ended on the Illinois side of the river after the automobile crossed the Dr. Martin Luther King Bridge when the driver lost control of the Chrysler and it came to a stop at a construction site. Officer Lawrence approached the automobile with his revolver drawn and ordered appellant, the sole occupant, out of the car. Appellant complied, was told to lie on his face, and was handcuffed after a brief scuffle during which the East St. Louis Police arrived. Officer Lawrence began to help appellant to his feet when he noticed the butt of a .32 caliber automatic pistol protruding from appellant's right-rear pants pocket. The gun was confiscated immediately. A sawed-off shotgun was found on the front seat of the Chrysler. The East St. Louis Police then escorted appellant to their station.

St. Louis police investigators recovered two .32 caliber shell casings near the place where the victim's body was found. The medical examiner found three spent .32 caliber bullets when he autopsied the victim. Two of the bullets were suitable for firearms identification purposes. Paul Reeder, a police officer assigned to the Laboratory Division, Firearms Identification Section and an expert in the firearms identification field, testified that without question the recovered shell casings and bullets were fired from the .32 caliber automatic seized from appellant.

Appellant explained to a St. Louis police officer soon after the arrest that appellant had accepted a ride from a "dude" he did not know and that after they drove around a while the police began chasing them.

Appellant testified at trial on his own behalf, however, and offered a different version of the events which led to his arrest. He said he had taken the victim's automobile after having seen someone leave it on the street with its engine running. He further testified he found the pistol in the automobile and pocketed it while being chased by police.

A defense witness testified he and his brother had been with appellant until "about 4:45" on the afternoon in question when they dropped appellant off at Broadway and Delmar in St. Louis. The brother did not testify.

There was no other defense evidence of substance.

■ Appellant first claims the trial court erred in failing to submit a manslaughter other than by culpable negligence instruction. The jury was instructed under MAI–CR 6.19, Murder: in the First Degree in Robbery, a felony murder instruction, and under MAI–CR 6.06, Murder: Second Degree Conventional. Under such circum-

stances, the court is required to submit also MAI–CR 6.08, Manslaughter: Other than by Culpable Negligence. Note on Use 2 to MIA–CR 6.19, referring to the applicability of Notes on Use MAI–CR 6.15 (Note on Use 5). Accord, MAI–CR 6.06, Note on Use 4; and, MAI–CR 6.02, Note on Use 4.c.2; *State v. King*, 577 S.W.2d 621 (Mo. banc 1979). Obviously, the failure to submit the manslaughter instruction was error.

Not all errors require reversal. Failure to give an instruction in violation of the Rules or applicable Notes on Use is error, its prejudicial effect to be judicially determined. Rule 20.02(e), adopted May 18, 1973, effective January 1, 1974.

Appellant directs the argument in his brief only to the proposition that the failure to instruct the jury on manslaughter was error. This court agrees, and the state admits as much in its brief. The question for determination is whether the error was prejudicial or harmless.

The state, however, claims that the error was inconsequential because appellant affirmatively waived his right to have the manslaughter instruction given. Further the state argues because appellant was convicted of murder in the first degree in robbery that such a finding foreclosed consideration of the lesser offense of manslaughter.

The case at bar is almost identical with *State v. Greenhaw*, 553 S.W.2d 318, 327 (Mo.App.1977). There, in reviewing the failure of the trial court to give a manslaughter instruction under plain error Rule 27.20(c), the appellate court found reversal was not warranted because there was no manifest injustice or miscarriage of justice. The court reasoned, at page 327:

> Rule 20.02(e), V.A.M.R., provides that the giving or failing to give an MAI–CR instruction is not per se prejudicial. The jury was instructed upon both murder in the first and second degree and returned a verdict of first degree murder. Under the instructions given, the jury could not have considered second degree murder until they first acquitted the defendant of murder in the first degree. If a manslaughter instruction had been given, the jury could not have considered that offense until they had acquitted the defendant of both murder in the first and second degree. Not having taken the first step in reducing the offense, the jury could not, under the instructions, have considered a manslaughter instruction, even if given.

The same reasoning applies here. Appellant does not argue any prejudice because of the omission of the manslaughter instruction, nor was there any evidence which would have mandated such an instruction prior to March 1, 1975. See also, *State v. Ginnings*, 466 S.W.2d 675, 677 (Mo.1971) (concurring opinion); *State v. Foran*, 255 Mo. 213, 164 S.W. 215[4] (Mo.1914) [overruled on other grounds in *State v. Clough*, 327 Mo. 700, 707, 38 S.W.2d 36, 40 (Mo. 1931)].

During the instruction conference appellant argued that the jury should not be instructed as to second degree murder. The court then asked appellant's counsel whether he was "at this time requesting any instructions that the Court is not giving" and he replied, "No, we're not."

Because appellant objected to the court's second degree murder instruction, it can be inferred that he would also have objected to a manslaughter instruction. Having stated to the court that he wished to offer no further instructions, he at least acquiesced in the omission. See, *State v. Swiney*, 296 S.W.2d 112, 116 (Mo.1956); *State v. Schulten*, 529 S.W.2d 432, 435 (Mo.App.1975). The error was not so prejudicial as to require reversal.

■ Appellant also contends that the evidence was insufficient to sustain a conviction of first degree murder, claiming there was no evidence that the alleged homicide was committed during a robbery. Appellant correctly asserts that such a conviction must be predicated upon substantial evidence that the murder was committed during the perpetration of a robbery, *State v. Conway*, 351 Mo. 126, 171 S.W.2d 677 (Mo. 1943), and that the state must prove the existence of facts establishing the elements of robbery. However, as appellant acknowledges, upon review this court must

consider as true the evidence favorable to the state together with all reasonable inferences, and must reject all contrary evidence and inferences. *State v. Longmeyer*, 566 S.W.2d 496 (Mo.App.1978); *State v. Colton*, 529 S.W.2d 919 (Mo.App.1975).

The evidence shows: (1) the victim was shot at about 4:45 p. m., December 31, 1976 as he was leaving his place of business; (2) the victim's automobile had been on a parking lot adjacent to his place of business; (3) his body was found on the sidewalk in front of the place of business; (4) within forty-five minutes, a St. Louis police officer gave chase to the victim's automobile; (5) when stopped, the automobile contained but one person, the appellant; and (6) when arrested, the appellant struggled and a gun, ultimately proved to be the murder weapon, was found upon his person.

Given this set of circumstances, and the required standard of review, there was sufficient evidence to support a finding that appellant shot the victim while robbing him of his automobile. Accordingly, appellant's second point is denied and the judgment affirmed.

REINHARD, P. J., and GUNN and CRIST, JJ., concur.