STATE of Missouri,
Plaintiff-Respondent,

v.

Orson GUYTON, Defendant-Appellant.

No. 42369.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 11, 1982.

Motion for Rehearing and/or Transfer
Denied June 18, 1982.

Applications to Transfer Denied
July 12, 1982.

Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

This appeal is brought by the defendant, Orson Guyton, from a conviction of one count of manslaughter, § 565.005 RSMo. (1978), and three counts of first degree robbery, § 569.020 RSMo. (1978), wherein the defendant was sentenced to serve ten years on each of the four counts, all sentences to run consecutively with each other. The facts are as follows.

On Saturday, March 3, 1979, Orson Guyton and a friend, Reginald Parks, spent the latter part of the evening at JC's, a club located on Whittier near Lindell. At approximately 12:30 a. m., March 4, 1979, the defendant and Parks left JC's together and walked to the City Cousin, a restaurant located near the corner of Sarah and Lindell in the City of St. Louis.

Upon reaching the City Cousin, defendant and Parks entered the bar area of the restaurant. Parks ordered a drink. The bartender requested some identification, which Parks failed to produce. Both the defendant and Parks were asked to leave the restaurant by Mack Brindley, the manager. Roger Johnson and Ronald Carter, two customers and friends of Brindley, joined Brindley as he escorted defendant and Parks to the door of the restaurant.

Once they reached the door, defendant and Parks each pulled a pistol from beneath their jackets. They forced Brindley, Johnson and Carter back into the restaurant and Parks announced a robbery. Evidence at trial indicated that Parks was holding a .22 caliber pistol, and that defendant was holding a .357 magnum revolver.

Returning to the restaurant area defendant attempted to open the cash register without success. Brindley was forced behind the bar to open the cash register. While attempting to do so he was fatally wounded by a .22 caliber projectile. The evidence also shows that Brindley received a non-fatal wound from a .357 magnum revolver.

Following the shooting of Brindley, Parks robbed Stewart Simonson of his wallet. In furtherance of this robbery Parks wounded Simonson. Parks proceeded to rob Rodney Bogay and Ronald Garms of their watches and jewelry. At some point during this chain of events Parks also wounded Walter Reynolds.

Defendant and Parks left City Cousin by the front door. They were greeted by a number of St. Louis Police Officers. Parks was shot and killed while attempting to flee. The defendant was apprehended. Upon questioning by the police, defendant signed a confession in which he admitted going to the City Cousin with Parks for the purpose of robbing the restaurant. He denies shooting Brindley or robbing any of the customers.

By indictment, defendant was charged on eight different counts. All of these counts allege that defendant acted with Parks on March 4, 1979. On October 15, 1979 the prosecutor formally entered a nolle prosequi in favor of the defendant on Counts IV and VII. In Count I defendant was charged with first degree murder of Brindley. § 565.003, RSMo. (1978). In Counts II and III defendant was charged with first degree assault of Stewart Simonson and Walter Reynolds. § 565.050, RSMo. (1978). In Counts V, VI and VIII defendant is charged with the crime of first degree robbery of Stewart Simonson, Rodney Bogay and Ronald Garms.

Under Count I, the jury was instructed on first degree murder and manslaughter pursuant to MAI–CR 2d 15.00(3). The jury found the defendant innocent of first degree murder, and guilty of manslaughter. Defendant was acquitted of both counts of first degree assault, and found guilty of all three counts of first degree robbery. The defendant was sentenced, and this appeal followed.

I

In his first point on appeal, defendant contends that his acquittal by the jury for first degree murder (felony murder) necessarily acquits him of manslaughter. His contention is primarily based upon the fact that Instruction No. 8 on first degree murder is virtually identical to Instruction No. 9 on manslaughter.[1]

---

1. *Instruction No. 8:*
   As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
   First, that on March 4, 1979, in the City of St. Louis, State of Missouri, the defendant or Reginald Parks caused the death of Mack Brindley by shooting him, and
   Second, that he did so in attempting to rob Mack Brindley, and
   Third, that the defendant either before or during the attempted commission of robbery of Mack Brindley, with the purpose of promoting its commission, aided Reginald Parks in attempting to commit that offense, then you will find the defendant guilty under Count I of murder in the first degree.
   However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
   A person attempts to forcibly steal and thereby attempts to commit robbery, when in the course of attempting to steal he uses or threatens the immediate use of physical force upon another person for the purpose of compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.
   If you do find the defendant guilty under Count I of murder in the first degree, you will fix his punishment at life imprisonment.
   (MAI–CR 2.12, modified by 15.12 and 33.01. Submitted by State).

   *Instruction No. 9:*
   If you do not find the defendant guilty under Count I of murder in the first degree, you must consider whether he is guilty under Count I of manslaughter.
   As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
   First, that on March 4, 1979, Reginald Parks with the aid or attempted aid of defendant attempted to rob Mack Brindley, and
   Second, that the defendant, either before or during the attempted commission of the offense of robbery in the first degree, with the purpose of promoting its commission, aided such other person in attempting to commit that offense, and
   Third, on March 4, 1979, in the City of St. Louis, State of Missouri, defendant or such other person caused the death of Mack Brindley by shooting him, and
   Fourth, that such offense was committed by defendant or such other person in the course of furtherance of the offense of attempt robbery in the first degree of Mack Brindley, then you may find the defendant guilty under Count I of manslaughter.
   However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
   (MAI–CR 15.18 modified by 2.05 and 2.12. Given by the Court).

Before we address defendant's first contention, a review of the transcript reveals that the defendant failed at the instruction conference and in his motion for a new trial to raise this contention. The state asserts that such failure does not preserve any instructional issue before this court and should not be considered. *State v. Kennedy*, 596 S.W.2d 766, 770 (Mo.App.1980). If we find that plain error exists, Rule 29.12(b) (1981), the state contends the defendant's substantial rights were not affected and he suffered no manifest injustice from the alleged error.

■ From the record before us we have determined that plain error does exist. Although the court instructed the jury on conventional manslaughter, as it must, when the defendant is charged with first degree murder, *State v. Gordon*, 621 S.W.2d 262 (Mo.1981); *Supplemental Notes on Use Applicable to 15.00 Series*, MAI–CR 2d 15.-00(3)(e); it improperly included as an element, a finding of robbery (a felony), which is not required. From the facts of this case the trial court was constrained to modify the verdict directing instruction on active participants or aiders, (MAI–CR 2d 2.12) by the conventional manslaughter instruction (MAI–CR 2d 15.18). When the court modified the conventional manslaughter instruction by MAI–CR 2d 2.12, the court should have included only those elements which are required to be found for the lesser included offense. Although the trial court committed an instructional error, we recognize that such error is not plain error unless the trial court had so misdirected the jury on the law of the case as to cause manifest injustice. *State v. Tilley*, 569 S.W.2d 346, 349 (Mo.App.1978). The inclusion of robbery as an element of manslaughter is in derogation of defendant's substantial rights because the jury was instructed on the same crime (felony-murder) twice. The defendant was deprived of the opportunity to have the jury instructed on manslaughter and have the expectation of being acquitted

of that offense. Such an error constitutes manifest injustice. For the reasons stated above we hold that the errors in Instruction No. 9 constitute plain error, and defendant's conviction for manslaughter must be reversed.

■ Defendant's contention that his acquittal for first degree murder requires acquittal for manslaughter because of the similarity between the instructions is without merit. Although Instructions 8 and 9 were quite similar, the jury was never properly instructed on the charge of manslaughter and therefore it never had the opportunity to consider the defendant's guilt or innocence for the crime of manslaughter. After an examination of the record we find that the acquittal for first degree murder does not foreclose defendant's potential conviction or acquittal for manslaughter. We remand this case for retrial of the defendant for manslaughter only.

We recognize the fact that instructions in this case present the trial judge with an extremely difficult task. The defendant was charged with first degree murder. Consequently, the trial judge must instruct down, and give a conventional manslaughter instruction. In addition, the trial judge must modify the instruction on active participants or aiders, MAI–CR 2d 2.12 by the manslaughter verdict director, MAI–CR 2d 15.18. The approved instructions offer little guidance in this difficult task.[2]

■ To eliminate any future misunderstanding we will identify the proper instruction to be given in similar circumstances. We begin with an examination of the substantive law. Manslaughter is defined as: "every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." § 565.005, RSMo (1978). It is well settled that second degree murder is the killing of another with pre-

2. We recognize the fact that the approved instructions constitute a comprehensive system for discerning the proper instructions in any given criminal case. In all comprehensive systems, however, there arise unusual circumstances which were not fully anticipated, and thus, difficult to deal with under the system. So it is here.

meditation and malice, but without deliberation; and that manslaughter is any other killing (not justifiable or excusable), which necessarily is without premeditation or malice. *State v. Anderson*, 515 S.W.2d 534, 537 (Mo. banc 1974). Manslaughter is a residuary homicide offense; an unintentional killing of another which did not occur in the commission of a dangerous felony. Thus, if an actor assaults another with the intent to kill and death results he is liable for second degree murder; but if he assaults another without the intent to kill and death results, then he is liable for manslaughter. *State v. Smith*, 240 S.W.2d 671, 674 (Mo.1951).

To be guilty of second degree murder a participant or aider must aid the commission of that offense with the intent of promoting the intentional killing of the victim. § 562.041 RSMo. (1978). A participant in the offense of manslaughter would have to aid the commission of the offense with the intent of promoting the unintentional killing of the victim. *Id.* This is a nonsequitur. A defendant can intend to promote an intentional act; but how is it possible to intend to promote an unintentional act? The answer is that it is not possible. The defendant-aider never harbors an intent to promote the commission of manslaughter. We find support for this conclusion in two opinions by the Supreme Court of Missouri.

In *State v. Grebe*, 461 S.W.2d 265 (Mo. banc 1970), the victim was killed during an altercation between himself and two others, the defendant and her son. The court found that the defendant and her son engaged in a joint assault upon the victim, and that the defendant intentionally aided and abetted said assault. *Id.* at 267. Furthermore, the court found that during the assault, the defendant's son stabbed and killed the victim. *Id.* Upon these facts the court found that the defendant was properly charged with manslaughter. *Id.* This case reveals the fact that the defendant's liability for manslaughter is not dependent upon her intent to promote the commission of manslaughter. Her liability stems from her intent to aid and abet the assault out of which the manslaughter arose.

The gravamen of assault is the "... intentional offer of bodily injury to another under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to carry out the attempt ...." *State v. Boyd*, 559 S.W.2d 59, 60 (Mo.App.1977). It is an act of force against another person with the intent to injure. A participant or aider in the offense of assault must aid the commission of the offense with the intent of promoting the intentional injury of the victim. If the defendant aids the actor in an assault, with the intent to promote that offense, and the actor unintentionally kills the victim; then the defendant is liable for manslaughter as an aider and participant. The Supreme Court expressed this same conclusion in *State v. Handley*, 585 S.W.2d 458 (Mo.1979).

> In order to be guilty as an aider and abetter of manslaughter, one must *knowingly* and *intentionally* aid and abet the assault which resulted in the death of the victim, ... this distinguishes manslaughter from first degree murder (felony-murder) in which knowingly and intentionally aiding and abetting only the robbery would suffice for conviction because of the strict liability imposed by the felony rule.

*Id.* at 463. This expression of the substantive law indicates the proper form for the jury instructions.

When the defendant is an aider or participant of first degree murder, MAI–CR 2d 2.12 must be modified by the appropriate first degree murder verdict director. In this instruction the jury must find that the defendant aided the commission of the applicable felony with the purpose of promoting that felony. When the trial court instructs down on manslaughter it must exclude the felony instructed on under the first degree murder instruction. Instead, the trial court must instruct the jury that it must find that the defendant aided the commission of an assault with the purpose of promoting that offense. An example of a proper manslaughter instruction in the case at bar, (MAI–CR 2d 2.12 modified by MAI–CR 2d 15.18), is as follows:

If you do not find the defendant guilty under Count I of murder in the first degree, you must consider whether he is guilty under Count I of manslaughter.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on March 4, 1979, Reginald Parks, with the aid or attempted aid of defendant, committed the offense of assault upon Mack Brindley at 4111 Lindell Boulevard in the City of St. Louis, and

Second, that the defendant either before or during the commission of the offense of assault, with the purpose of promoting its commission, aided Reginald Parks in committing that offense, and

Third, that on March 4, 1979, Reginald Parks caused the death of Mack Brindley by shooting him, and

Fourth, that such offense was committed by Reginald Parks in the course and furtherance of the offense of assault, and

Fifth, that the defendant knew such other person was practically certain to commit such additional offense, then you may find the defendant guilty under Count I of manslaughter.[3]

The notes on use provide that the trial court must give a separate instruction defining the offense originally contemplated. Notes on Use No. 5, MAI–CR 2d 2.12. In this context the trial court must rely on the MAI assault instructions. The appropriate assault definitional instruction derived from the approved instructions will depend upon the facts of each case. It is improper, however, in any manslaughter case to include the intent to kill as an element of the assault definition. Including such an element is inconsistent with the

unintentional offense of manslaughter. In this case a hand gun was used by Reginald Parks during the assault upon the victim. Thus, the proper assault definitional instruction can be derived from MAI–CR 2d 19.04.2.

A person commits the offense of assault when he knowingly causes physical injury to another by means of a deadly weapon.[4]

On retrial the aider and participator instruction, MAI–CR 2d 2.12 should be modified to instruct on manslaughter in accordance with this opinion.

## II

▪ Defendant next contends that he suffered substantial prejudice due to the comments of the prosecuting attorney in closing argument. The propriety of closing arguments is a matter left within the sound discretion of the trial court. Appellate courts will reverse for such error only when that discretion is clearly abused. *State v. Mitchell,* 611 S.W.2d 223, 227 (Mo. banc 1981). Trial judges enjoy this discretion because they are in a much better position than the appellate court to gauge the prejudice, if any, generated by an attorney's comments.

▪ It is quite clear that the prosecuting attorney in his closing argument attempted to create the inference that the defendant engaged in past criminal conduct, and that the events at City Cousin were simply the latest manifestation of his criminal career. Defendant's testimony indicates he was a suspect in previous criminal investigations but had never been arrested. The objections of the defense attorney during the prosecutor's closing argu-

---

3. The Notes on Use following MAI–CR 2d 2.12 provide that paragraphs 3, 4 and 5 must be given when a defendant is charged with an offense (manslaughter) other than the offense initially contemplated (assault). In the absence of direction from our Supreme Court, we feel constrained to follow this requirement, but we have some question about the fifth paragraph in a manslaughter case. It is difficult to imagine how the defendant can be practically certain that the other person will unintentionally kill the victim.

4. Of course the trial court must define any word in this definition which is required to be defined under the Notes on Use under any MAI–CR 2d form applicable to the offense defined. Notes on Use No. 5, MAI–CR 2d 2.12.

For this assault definitional instruction the trial court may define "knowingly" and "deadly weapon" upon its own motion. If either party requests definition of "knowingly" or "deadly weapon," the court must give a definition. Notes on Use No. 3, MAI–CR 2d 19.04.2.

ment, made it very clear to the jury that the defendant had never been arrested for any crime prior to March 4, 1979. The prosecutor's argument is not a paradigm to be repeated on retrial. We cannot say, however, that this record supports a holding that the trial judge abused his discretion in finding the prosecutor's remarks were not prejudicial. Therefore we reject defendant's second contention.

### III

 In his final point on appeal, the defendant alleges that the trial court committed prejudicial error in allowing Police Officer Frank Stubitz to give his opinion as a ballistics expert on whether the bullets discharged at City Cousin were fired from the weapons recovered by the police. In support of this assertion, defendant argues that Stubitz' opinion was erroneously allowed because it was unsupported by evidence in the record. The question of whether an expert opinion is based upon and supported by sufficient facts in evidence to sustain it is a question of law. *State v. Koberna,* 396 S.W.2d 654, 663 (Mo. 1965). The admission or exclusion of expert testimony is a matter within the sound discretion of the trial court. *Eickmann v. St. Louis Public Service Co.,* 363 Mo. 651, 253 S.W.2d 122, 130 (1952). Therefore, the conviction will not be reversed unless there is a clear abuse of discretion, which resulted in prejudice to the defendant.

Initially, defendant asserts that the expert must testify to the "specific imperfections" on the exhibit bullets, but defendant has failed to inform us of what is required for a proper foundation and how the testimony of Officer Stubitz fails to meet those requirements. It is true that expert opinion must be supported by facts in the record. *State v. Maxie,* 513 S.W.2d 338, 344 (Mo.1973). When a hypothetical question is used to elicit an opinion, the question must be based on material facts in evidence, and those facts must be fairly presented. *Odum v. Cejas,* 510 S.W.2d 218, 222 (Mo.App.1974). This requirement, however, is not as stringently applied when the expert's opinion is based upon personal observation and knowledge. *State v. Johnson,*

504 S.W.2d 334, 336 (Mo.App.1973); II Wigmore on Evidence § 675, p. 937 (Chadbourn revision 1979). This difference is largely due to the fact that on cross-examination the opponent can readily attack the method or accuracy of the expert's personal observations. Thus, the weight and credibility of the expert testimony is properly left to the jury.

In *State v. Greenhaw,* 553 S.W.2d 318 (Mo.App.1977), the court held that the witness could testify to the size classification of a shotgun pellet on the basis of his expertise in the ballistics field and his observation of the pellet. *Id.,* at 327. In an early case on the admissibility of expert ballistics testimony, the Supreme Court described in detail the testimony of the expert witness. *State v. Shawley,* 334 Mo. 352, 67 S.W.2d 74, 80 (1933). The foundation laid for the testimony in *Shawley* was substantially identical to the foundation laid for Stubitz' testimony. In *Shawley* the court found that the testimony was not prejudicial, *State v. Shawley, supra,* 67 S.W.2d at 85 and we so hold here. Defendant's final contention is without merit.

The manslaughter conviction is reversed and remanded for retrial. The judgment in all other respects is affirmed.

SMITH, P. J., and SATZ, J., concur.