**O'Dell BLACKMON, Appellant,**

v.

**Carl WHITE, Superintendent, Appellee.**

**No. 87–1133.**

United States Court of Appeals,
Eighth Circuit.

Submitted July 29, 1987.
Decided Aug. 7, 1987.

Robert O. Appelton, Jr., Clayton, Mo., for appellant.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

O'Dell Blackmon, a Missouri inmate, is serving sentences of life and 35 years for the crimes of first-degree felony murder and assault with intent to kill, respectively. His case comes to us on appeal of the District Court's[1] denial of his petition for a writ of habeas corpus. We affirm.

Blackmon was convicted in 1977 of causing the death of an accomplice during the armed robbery of an office of the Beneficial Finance Company in St. Louis. There was evidence from which the jury could

1. The Hon. William L. Hungate, United States District Judge for the Eastern District of Missouri.

have found that the accomplice was mortally wounded in an exchange of gunfire between Blackmon and an off-duty policeman who was resisting the robbery. The jury rejected Blackmon's alibi. On direct appeal the Missouri Court of Appeals affirmed, 587 S.W.2d 292 (1979). His petition for post-conviction relief was denied, 639 S.W.2d 127 (Mo.App.1982).

Blackmon's original petition for habeas corpus was filed in 1983. He claimed that his attorney had rendered ineffective assistance on appeal by not raising as error the trial court's failure to instruct the jury as to manslaughter. The District Court granted the writ on the ground that Blackmon had been entitled under Missouri law to an instruction on the lesser offense of manslaughter and that the trial court's failure to give that instruction, even though not requested, constituted a denial of due process. On appeal, this court reversed, *Blackman v. White*, 767 F.2d 929 (8th Cir. 1985) (per curiam) and directed the District Court upon remand to address the question actually raised in Blackmon's petition, i.e., whether his attorney on appeal had been ineffective in failing to raise the instructional issue. On December 23, 1986, the District Court denied the writ, holding that counsel had not been ineffective.

■ A criminal defendant is entitled to the effective assistance of counsel during his appeal, just as at trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets out the standard by which attorney effectiveness at trial is to be judged. We have applied the same standard to questions of attorney effectiveness on appeal. *Bell v. Lockhart*, 795 F.2d 655, 657 & n. 6 (8th Cir.1986). The *Strickland* test requires first a determination whether the attorney's performance was deficient when compared with the assistance which would have been given by any reasonably competent attorney faced with the same circumstances. In making this judgment, the courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury. The fact that the choice made later proves to have been unsound does not require a finding of ineffectiveness. The petitioner bears the burden of successfully challenging particular acts and omissions of his attorney which were not the result of reasonable professional judgment; it is not enough to complain after the fact that he lost, when in fact the strategy at trial may have been reasonable in the face of an unfavorable case. See *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

■ Even if the criminal defendant demonstrates that his lawyer's performance at trial or on appeal fell below a reasonable standard of competence, he must also show a reasonable probability that the lawyer's insufficiency made a difference in the outcome of the proceedings. He must show at least "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

At Blackmon's trial, the state presented evidence from which the jury could have concluded that Blackmon and an accomplice entered the office of the Beneficial Finance Company and announced a robbery. Blackmon was armed with a .32 caliber pistol; his accomplice was unarmed. An employee of the company was present, as was a customer who happened to be an off-duty policeman. The policeman drew his .38 caliber service pistol and challenged the accomplice, who struggled with him for control of the gun. While the two were wrestling on the floor, Blackmon is alleged to have fired several shots into the melee. The policeman returned fire. The policeman was gravely wounded but survived. Both robbers fled. Shortly, pursuing police found the accomplice, mortally wounded. He had suffered a single gunshot wound in the back which was shown to have been caused by a bullet of smaller caliber than those fired by the policeman.

Blackmon's defense was alibi; he denied being present at the Beneficial Finance Company on that day. There was no evidence suggesting that the killing was other than an adjunct to the robbery. There was no suggestion of lawful provocation or accident. At the conclusion of the testimony, the jury was instructed on first-degree (felony) murder. The state suggested to the court that a complete statement of the law would also include instructions on lesser degrees of homicide. The defendant did not request instructions on lesser degrees. The court declined to instruct down, and no objection was made by the defendant. The jury returned a verdict of conviction on felony murder, armed robbery, malicious assault, and a persistent offender violation.[2]

Significantly, Blackmon does not find fault with his attorney's strategy at trial. He relied on the defense of alibi. All the evidence pointed towards a criminal episode in which the homicide was tied in with the robbery and the assault on the policeman. Suggesting to the jury that Blackmon had committed only a manslaughter, rather than first-degree murder, would have placed him at the scene. Since robbery and malicious assault carried potential life sentences, reduction of the homicide charge would be a poor compromise under those circumstances. Further, since first-degree murder was defined as any life-taking which occurred in the course of certain felonies (regardless of mental state), a jury initially inclined to convict only of manslaughter would be logically drawn back to conviction on the felony-murder charge instead. *Cf. State v. Olds*, 603 S.W.2d 501, 508–09 (Mo.1980).

 Having decided not to request a manslaughter instruction, a choice which was reasonable in view of the overall strategy of the case, Blackmon's counsel could be heard on direct appeal on the instructional issue only if the trial court's failure to give the manslaughter instruction *sua sponte* was plain error. In Missouri, an instructional error is reviewable as plain error only if the jury was so misdirected by the faulty instructions that manifest injustice resulted. *State v. Guyton*, 635 S.W.2d 353, 357 (Mo.App.1982). Such a determination is to be made upon a consideration of the facts and circumstances of each case. *State v. Tilley*, 569 S.W.2d 346, 349 (Mo. App.1978). If, under the Missouri law as it stood at the time of Blackmon's direct appeal, the Missouri appellate courts would have viewed this instructional error as so egregious as to warrant reversal even though it was raised for the first time on appeal, then Blackmon has suffered prejudice which satisfies the reasonable-probability standard of *Strickland*, for he has lost the opportunity for a new trial at which he could possibly have been acquitted or have received a lesser sentence. In order to prevail here, however, he would also have to show that a reasonably competent lawyer would have known in 1977 that the instructional issue was reviewable as plain error. If, on the other hand, Missouri would not have reviewed this issue as plain error, then he has lost nothing by his attorney's failure to raise the issue.

At the time of Blackmon's trial, Missouri law placed on the trial court the duty of instructing the jury on all lesser grades of homicide, whether requested to do so or not. *State v. Smith*, 518 S.W.2d 665, 668–69 (Mo.App.1975). This procedure was mandated by the Missouri Approved Instructions for Criminal Trials (MAI—CR), which are promulgated by the Missouri Supreme Court. MAI—CR is procedural in nature, since the Supreme Court does not have the power to alter substantive law by court rule. However, some of the changes in the MAI were the result of changes in substantive law, particularly in the definition of voluntary manslaughter.

Prior to 1975, instructions on manslaughter were to be given only if there was sufficient evidence from which the jury could acquit on the greater offense and convict on manslaughter (the normal rule on submission of lesser offenses). This practice was in line with the understanding that manslaughter differs from second-degree murder only by the presence of lawful

---

2. The robbery and repeat-offender sentences were later vacated on double-jeopardy grounds.

provocation. A presumption that an intentional killing is second-degree murder was followed in Missouri. Under that rule, the state could demonstrate that the intentional killing was deliberated upon, thereby proving first-degree (conventional) murder, or it could be demonstrated that there had been a sudden provocation which vitiated the malice necessary for conviction on second-degree murder. The homicide would then be manslaughter in its voluntary form. See *State v. Williams*, 442 S.W.2d 61, 64 (Mo.1969). At that time a manslaughter instruction would rarely be given in a felony-murder case. This was because in most felony-murder cases there is no evidence to contradict the state's assertion that the killing occurred during commission of a felony. The only dispute would be whether the defendant committed the felony during which the death occurred. If there were insufficient evidence for the jury to acquit of felony murder *and* convict of manslaughter, then, under the traditional rules, the instruction would not be offered to the jury. On the other hand, if the instruction were given to the jury and the jury acquitted of felony murder, they would necessarily have found that the defendant had not committed the felony *or* the homicide, and the manslaughter instruction would be useless. It was sometimes said that the defendant could either be guilty of felony murder or he was guilty of nothing. See *State v. Hogan*, 565 S.W.2d 848, 850 (Mo.App.1978).

In 1975 the Missouri Supreme Court held that the manslaughter instruction must be given in all cases of conventional first- or second-degree murder, even though there is no evidence of provocation. In doing so, the Court did away with the common-law presumption that intentional killings are second-degree murder. Manslaughter was established as a residuary offense from which the state must prove additional levels of culpable mental state in order to get a conviction for murder. *State v. Stapleton*, 518 S.W.2d 292 (Mo.1975). The change in the substantive law of manslaughter was reflected in an amendment to the MAI—CR, effective on March 1, 1975, establishing an "automatic submis-

sion" rule for manslaughter instructions. The revised instructions included a provision stating:

> Where *felony-murder* either in the first or second degree is the *only* murder submitted ... the above rules will not be applied, so that lesser offense instructions will not be given *automatically*. Ordinarily, where there is sufficient evidence to warrant the giving of a felony-murder instruction, there will be no evidence to support the submission of a lesser offense....

MAI—CR, 6.02, notes, caveat a. (March 1, 1975). See also *Fulsom v. State*, 625 S.W.2d 249, 251 (Mo.App.1981).

In September 1975, the Court, by rule, extended the automatic-submission rule to felony-murder cases. See MAI—CR 6.02, notes, 4 c.2 (September 28, 1975) *cited in State v. Martin*, 602 S.W.2d 772, 777 (Mo. App.1980). These instructions were in effect when Blackmon went to trial. The Court cited *Stapleton* as support for this change, stating that the instruction down to manslaughter in felony-murder cases was mandated because of the nature of manslaughter. *Ibid.*

The logic of this rule was not compelling. Extension of the automatic-submission rule from conventional murders to felony murders was not mandated by the holding in *Stapleton*. *Stapleton* was based on the premise that the jury should have discretion to determine the mental state of the defendant in an intentional killing, even if the evidence points to one of the higher grades of homicide. Later cases demonstrated that submission of lower-degree homicide instructions did not have to be supported by evidence and could even be inconsistent with the evidence. See, *e.g., State v. King*, 577 S.W.2d 621 (Mo.1979), holding that in a case where uncontradicted evidence showed that an execution-style murder had taken place, it was reversible error not to give instructions on second-degree murder and manslaughter; and *State v. Holt*, 592 S.W.2d 759 (Mo.1980). *Holt* was a murder-for-hire case. The jury convicted of second-degree murder in lieu of capital murder. Holt argued that since the

fact situation compelled a conclusion of deliberation and premeditation, it was inappropriate to give the instruction on second-degree murder, for acquittal on the capital count necessarily meant that the jury thought he had not committed the crime. The Court held, however, that there was no error, stating:

> [N]ot finding appellant guilty of capital murder does not foreclose a finding of the necessary intent for second-degree murder, conviction of which would permit the jury more flexibility as to punishment. If the jury decides to be lenient under these circumstances, it does not mean it is being inconsistent or that its verdict is without factual basis.

*Holt*, 592 S.W.2d at 764. The automatic-submission rule has thus been seen as a policy choice, giving the jury a power to commute murders to a lower grade. *State v. Martin*, 602 S.W.2d 772, 778–79 (Mo. App.1980). It has been criticized for giving juries no guidance and allowing arbitrary results. *Id.* at 778; see also *Love v. State*, 670 S.W.2d 499, 509 (Mo.1984) (Billings, J., concurring); see generally Venker, *Missouri Homicides: Lesser Included Offenses and Instructing Down*, 48 Mo.L. Rev. 935 (1983).

But even if *Stapleton* and the instructional rules following it represented a decision to commit to the jury's discretion the determination of the defendant's mental state regardless of the evidence, that logic is not transferable to the felony-murder case. In Missouri, first-degree felony murder did not have a mental state element. The essential elements were (1) commission of a listed felony, and (2) a death caused thereby. R.S. Mo. § 559.007 (Supp.1975). Manslaughter is not, strictly speaking, a lesser-included offense within felony murder, because in its voluntary form it includes an element of intent which, perhaps because of lawful provocation, does not rise to the level of malice. In order for the jury to acquit of felony murder and convict instead of manslaughter, it would have to find that the defendant did not commit the felony but nevertheless had the intent to do an act which resulted in the death of the victim. This injects an additional element into the jury's deliberations, one which is not always factually supportable in a felony-murder trial. For instance, if the state's evidence showed that the victim died in a burning building, and there was no evidence showing that the defendant knew the victim was in the building, a manslaughter conviction would appear to be factually impossible, for once the jury had decided to acquit on felony murder, it would have no ground on which to base a manslaughter conviction. The giving of a manslaughter instruction in those circumstances, although mandated by the instruction rules, would be substantively wrong. *State v. Martin*, 602 S.W.2d 772, 779 (Mo. App.1980).

It appears that the Missouri Supreme Court regarded the automatic-submission rule as a procedural one derived from the MAI—CR, and not a rule of substantive law, at least as to instructing down in felony-murder cases. See *Love v. State*, 670 S.W.2d 499, 507 (Mo.1984) (Billings, J., concurring).[3] See also *Martin, supra*, 602 S.W.2d at 779–80 & n. 11.

A trial court's failure to give a lesser-degree instruction could still be reversible error if there were in fact evidence from which a properly instructed jury could have acquitted of the higher degree and convicted of the lesser. This is the approach which the Missouri courts have followed in reviewing these cases. While there are cases in which failure to instruct down has been reversed without an apparent showing of factual support for the lesser-degree instruction, they have been cases in which the trial court's error was objected to and was preserved for appeal. When, on the

---

**3.** Although Judge Billings's opinion in *Love* was a concurrence, it was joined by two judges. Judge Blackmar concurred separately, agreeing with the views expressed by Judge Billings. Thus four of the seven judges concluded that the automatic-submission rule was procedural, not substantive. The separate opinions of the Court, including the dissent, were in agreement that *Stapleton* had been wrongly decided. Moreover, that case was effectively overruled by acts of the legislature in which the automatic-submission rule was abandoned and manslaughter was redefined along narrow lines. See R.S. Mo. §§ 565.023 and 565.025(3).

other hand, no objection has been preserved, the appellate courts have reversed only when there existed evidence which would have allowed the jury to act rationally on the lesser-degree instruction. See *State v. Robinson*, 593 S.W.2d 227 (Mo. App.1979). There, the court stated "[n]ot all errors require reversal. Failure to give an instruction in violation of the Rules or applicable Notes on Use is error, *its prejudicial effect to be judicially determined.*" *Id.* at 229 (emphasis added). See also *State v. Olds*, 603 S.W.2d 501, 509 (Mo.1980) (no prejudice shown in failure to instruct down in a felony murder when the evidence would not support manslaughter alone), and *cf. State v. Kurtz*, 564 S.W.2d 856 (Mo.1978) (per curiam) (on plain-error review, no manifest injustice in trial court's failure to give mandatory instructions on lesser degrees in prosecution for conventional first-degree murder.)

Under the facts of the present case, we are convinced that the Missouri appellate courts in 1977 would not have reversed. Although the giving of the manslaughter instruction was mandated by the MAI—CR, those rules were regarded as procedural in nature and failure to follow them was to be reviewed in terms of the substantive prejudice, if any, which resulted from the error. The Missouri courts would have noted that in this case the evidence was uncontradicted that the killing occurred during commission of a robbery; that there was no evidence offered which would have led a rational jury to reject the robbery and find some lesser degree of homicide; and that the only question of substance presented to the jury was whether this defendant was guilty of the robbery in which a killing occurred. Under those facts and circumstances, the Missouri courts would not have found plain error. Even if the jury could have under the MAI—CR properly been instructed on lesser homicides which were not supported by the evidence, it would be rank speculation to suppose that a jury would have rejected the uncontradicted evidence of robbery and instead convicted of a manslaughter for which there was no supporting evidence.

It is speculation which this Court need not entertain.

Even if we are wrong and the Missouri appellate courts in 1977 would have reversed this case on plain error, we cannot say that Blackmon's attorney was not reasonably competent when he failed to raise the issue. We must view the scene as the attorney saw it in 1977. At that time, the automatic-submission rule on felony murders had been in effect for less than two years. Its meaning was not at all clear, as can be shown by the cases. There was reason to believe that the rule, being part of the MAI—CR rather than a statute or case law, would be regarded by the Missouri courts as only a procedural one which would not support reversal on plain error absent a strong evidentiary showing of actual prejudice. There were no cases suggesting routine reversal even on preserved error. These came later, see, *e.g., State v. Flenoid*, 617 S.W.2d 75 (Mo.1981). And the cases discussed above which suggested a policy of committing to the jury's discretion the determination of mental state even in the absence of supporting evidence (*e.g., King, supra*) were not decided until 1979. The only case favorable to Blackmon's position at that time that we have found was *State v. Smith*, 518 S.W.2d 665 (Mo.App. 1975). But that case is readily distinguishable from the present one. Smith was charged with felony murder in connection with attempted robbery. The trial court gave the jury instructions on that crime and on second-degree (conventional) murder, but did not instruct on manslaughter. Failure to instruct on manslaughter was held to be error. But in *Smith*, unlike this case, the jury was presented with two alternative theories. Smith admitted being present and shooting the victim. The state's theory was attempted robbery, while Smith claimed that the victim, a store-owner, mistook his intentions and threatened him with a firearm. In the ensuing confusion, the store-owner was shot. Under this evidence, the jury could rationally have chosen not to believe the state's attempted-robbery theory, and have chosen instead to believe Smith's provocation theory. In Blackmon's case, man-

slaughter simply was not a viable theory at trial. There was no basis for the jury to disbelieve that the killing occurred during a robbery but instead was some sort of homicide unrelated to robbery. For Blackmon's attorney at that time to have guessed that *Smith* somehow supported reversal in his case would have been an act of remarkable prescience. For him not to have done so was not incompetent.

For all the foregoing reasons, the decision of the District Court is affirmed.