STATE of Missouri, Respondent,

v.

James Edward KING, Appellant.

No. 60845.

Supreme Court of Missouri,
En Banc.

Feb. 13, 1979.

Rehearing Denied March 13, 1979.

Stuart A. Cofman, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, III, Daniel F. Lyman, Asst. Attys. Gen., Jefferson City, for respondent.

Bardgett, Judge.

This cause was transferred to this court upon order of the Missouri Court of Appeals, Eastern District, for the purpose of reexamining the existing rule as set forth in Notes on Use under MAI–CR 6.02 which requires that murder in the second degree and manslaughter be submitted to the jury whenever first degree murder is submitted by MAI–CR 6.02. Jurisdiction is in this court pursuant to Supreme Court Rule 83.02 and art. V, sec. 10, Mo.Const., as amended 1970.

Defendant appeals from a conviction by a jury of murder in the first degree and the resultant life sentence imposed by the court pursuant to the second offender act. The murder took place on September 22, 1975, which is prior to the effective date of the capital murder law of September 28, 1975.

Because appellant does not raise the issue of insufficiency of the evidence, a brief statement of the facts will suffice. On the afternoon of September 22, 1975, the victim and another employee left work and proceeded to a Baskin-Robbins ice-cream parlor in the City of St. Louis. The victim entered the establishment while the fellow employee remained in the car which was parked in front of the parlor. A man identified as defendant parked his car on a side street adjacent to the parlor, removed a gun from the dashboard, and exited the car leaving the motor running. The man entered the parlor and walked directly to within a few feet of the victim who gasped when she saw him. The man fired three times, killing the victim, who was defendant's estranged wife.

Defendant was identified by the victim's fellow employee and by two store customers. Defendant had an alibi defense and presented witnesses who testified that he was in Illinois with them at the time of the killing.

Following the close of the evidence, the court refused to give second-degree and manslaughter instructions "because it appears to the Court under the evidence in this case that the defendant is either guilty of that charge or he's not guilty of anything." (Tr. 309). Only one issue is raised on appeal, the failure of the trial court to

instruct the jury on second-degree murder and manslaughter.[1]

On appeal, the Court of Appeals, Eastern District, held reversible error was committed but stated:

"The evidence warranted only one conclusion—the victim was executed in cold blood deliberately, willfully, with premeditation and malice aforethought. The only contested factual issue was whether defendant was the killer. Establishment of the killing established also the circumstances under which it occurred, and the evidence establishing one also established the other. Disbelief of some or all portions of some or all of the witnesses' testimony could possibly lead to a conclusion that no homicide occurred but such disbelief could not affect only the quality of the killing. Only by the wildest conjecture and speculation is it possible to infer, or more properly, imagine, facts which might demonstrate a lack of deliberation or premeditation.

.    .    .    .    .

". . . While it may be true that the vast majority of homicide cases contains evidence which warrants 'instructing down' and that trial judges should be most liberal in finding evidentiary support for such instructions, there are cases where only one grade of homicide is established by the evidence. Pattern instructions must not preclude properly instructing in those cases. This is such a case."

The Court of Appeals recognized that the Notes on Use to Missouri Approved Instructions mandated "instructing down" in this case but strongly disagreed with that mandate, thus ordering the cause transferred to this court.

The difficulty with the Court of Appeals' reasoning is that it implies that if the jury found that defendant did in fact kill the deceased the jury would somehow be compelled by law to conclude defendant was guilty of first degree murder—that defendant (a) intended to kill her and (b) considered taking her life and reflected upon the matter coolly before shooting her. Or, put another way, it would appear that the only issue the jury would have to decide in such a case is that the defendant killed the deceased and the judge could then enter a judgment of guilty of murder in the first degree.

First degree murder was submitted by using MAI–CR 6.02. Had the defendant so requested, he could have had an instruction conversing the "intent to kill" element and/or the "coolly reflecting" element. See MAI–CR 3.02 et seq. and Notes on Use. Under such an instruction, if the jury failed to find the defendant reflected upon the matter coolly, etc., the jury would be instructed to return a not guilty verdict, even though they found that the defendant killed the deceased and intended to do so when he shot her. The notes on use requiring the submission of the lesser degrees of homicide recognize that a jury has the right and power, by way of example, to not find one of the mental elements of first degree murder yet still find the defendant intended to and did kill the deceased and is therefore guilty of second degree murder. The same applies to a jury's right and power to not find that the defendant *intended* to kill the deceased but to only find the defendant killed the deceased and is guilty of manslaughter.

The use of these homicide instructions in accordance with the Notes on Use tends to

1. Notes on Use to MAI–CR 6.02, Note 6, provides: "Additional instructions both on second degree murder (MAI–CR 6.06) and manslaughter (MAI–CR 6.08) *must* be given in all cases where the pleadings and evidence warrant the submission of first degree murder under MAI–CR 6.02. See V.A.M.S., Sections 556.220, 556.-230 and 559.030. This does not relieve the trial court of the responsibility for determining the highest grade of homicide supported by the pleadings and the evidence. If the pleadings or the evidence do not warrant the submission of first degree murder under MAI–CR 6.02 but both pleadings and evidence do warrant submission of second degree murder under MAI–CR 6.06, the jury *must* be instructed both upon murder in the second degree (MAI–CR 6.06) and manslaughter (MAI–CR 6.08). If the pleadings or the evidence warrant submission only of manslaughter under MAI–CR 6.08, that will be the only grade of homicide submitted."

insure that a person who is guilty of second degree murder will not be totally acquitted merely because the jury fails to find that the defendant "reflected upon the matter coolly and fully before shooting her." This will occur because the jury, after failing to find the "reflected on the matter, etc." element in the affirmative, will be afforded the opportunity to find the defendant guilty of murder second degree upon finding defendant intended to kill and did kill the deceased. It also affords the defendant the opportunity to have the jury consider the lesser homicide offenses. Another function it performs is that it recognizes the broad power reposed in juries by our society.

For a more detailed analysis of the problem and the reasons underlying this court's adoption of the requirement that lesser included homicide offenses be submitted see *State v. Stapleton*, 518 S.W.2d 292 (Mo. banc 1975).

We have considered respondent's arguments. They are similar to arguments which took place preceding the adoption of MAI–CR 6.02, note 6, and are not persuasive.[2] The mental elements constituting the various grades or degrees of homicide are for the jury to determine, and it is only the jury that has the authority to decide upon their presence or absence in any given case. The judgment is therefore reversed and the cause remanded for new trial.

MORGAN, C. J., DONNELLY, RENDLEN, SEILER and SIMEONE, JJ., and FINCH, Senior Judge, concur.

WELLIVER, J., not participating because not a member of the court when cause was submitted.

---

2. The same rule applies to homicides committed after May 25, 1977. See MAI–CR 15.00 3.d.