**STATE of Missouri, Respondent,**

v.

**Charlene Craig MARTIN, Appellant.**

**No. 40793.**

Missouri Court of Appeals,
Eastern District.

June 24, 1980.

Motion for Rehearing or Transfer to Supreme Court Denied July 16, 1980.

Application to Transfer Denied
Sept. 9, 1980.

---

Clifford B. Mayberry, Kirksville, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Mary C. P. Pincus, Asst. Attys. Gen., Jefferson City, for respondent.

SMITH, Judge.

Defendant appeals from her conviction by a jury of manslaughter and sentence by the court of ten years imprisonment under the then applicable second offender act. Sec. 556.280 R.S.Mo.1969.

Defendant raises several issues on appeal but we are confronted initially with a matter of plain error arising from the decision in State v. Handley, 585 S.W.2d 458 (Mo. banc 1979) which decision was handed down after the appeal was taken and after appellant's brief was filed. Defendant was charged with the killing of Gladys O'Brien on September 19, 1977, by causing her to suffer burns and smoke inhalation from which she died. It was charged that the killing was committed in the perpetration of the felony of arson. Trial began on June 6, 1978. The evidence was uncontradicted that Ms. O'Brien died from heat and smoke inhalation suffered during a fire in her home. There was evidence from which a jury could find that defendant intentionally set the fire which caused the death. There was evidence to the contrary. The cause was submitted to the jury on MAI–CR 15.04 (Murder in the First Degree in Arson) and MAI–CR 15.18 (Manslaughter: Conventional). Both instructions hypothesized the cause of death as "subjecting her to smoke and heat inhalation." The jury found defendant guilty of manslaughter.

■ Handley, supra, presented a situation where a defendant charged with first degree (felony) murder as an aider and abetter was convicted of second degree murder. A plurality of the court held that second degree murder was not a lesser included offense of first degree murder. The court then held further that the finding of guilt of second degree murder was an acquittal of the charge of first degree murder; that that finding determined that defendant did not participate in the felony; that because defendant was not present when the victim was killed and had been found not to have participated in the felony he could not be guilty of manslaughter and should be discharged. Four judges concurred in the disposition of the case, indicating four members of the Supreme Court did not believe defendant could be retried for manslaughter. No reference is made in the case to the requirements of MAI–CR 6.02 or 15.00 that a conventional manslaughter instruction must be given in all felony murder cases. If Hanley, supra, is controlling,[1] then we are confronted with a situation in which defendant was acquitted of first degree murder but convicted of manslaughter just as was true in Handley. In our case such an acquittal must mean that the jury either found that decedent did not die as a result of the fire or that defendant was not criminally responsible for that fire. Because there is no evidence of a cause of death other than heat and smoke inhalation either finding would absolve defendant of criminal responsibility for the death under the charged allegation of manslaughter. If defendant is not as a matter of law guilty

---

1. In State v. Bradshaw, 593 S.W.2d 562 (Mo. App.1979), the court held Handley, to be instructive but not binding because there was no concurrence except to result. Bradshaw and Handley involved the question of whether second degree murder was a lesser included offense of first degree murder. There was clearly no concurrence by a majority of the Handley court on that issue. Handley does not clearly establish whether a majority of the judges believed second degree murder could never be a lesser included offense of first degree murder or simply was not under the facts in Handley. There was, however, a concurrence by a majority on the issue of whether defendant could be retried for manslaughter although there was no concurrence on the reasoning expressed for that result. Implicit in the result is a concurrence by a majority of the court that a conviction for manslaughter could not stand in view of the jury acquittal of first degree murder.

of the crime for which she was convicted, then there is plain error affecting substantial rights amounting to a manifest injustice. Rule 29.12.

The state advances the theory that a manslaughter conviction can be supported on the basis that defendant prevented decedent from leaving the burning premises and that this resulted in her death. This contention lacks evidentiary support. There was evidence that defendant was heard shouting in or in the vicinity of decedent's home shortly before the fire. This would support an inference that defendant and decedent were arguing. There was evidence that decedent had bruises on her body in addition to burns. There was no evidence of the seriousness of the bruises, or the method of infliction, although the bruises were described as like those sustained by falling. The medical evidence did not establish that the bruises resulted from a force sufficient to cause decedent to be unable to escape, and in fact the autopsy revealed no concussion or brain injury, and no broken bones. Decedent, 85 years old but in generally good health and ambulatory prior to the fire, was found in a conscious or at least semi-conscious state within two feet of the back door lying on the floor and gasping for air. She had burns on her body, but she was found some distance from the flames and from any burned area. If it can be inferred that she was struck by defendant, which is no more probable than that she bruised herself falling in trying to escape, there is absolutely nothing in the record to support an inference that such blows caused her to be incapacitated or prevented her from leaving the house.

We, therefore, must decide whether as a matter of law the doctrine of *Handley* applies and if so does that cause the conviction to be unsupported by the evidence. The problem is presented because the Missouri Approved Charges—Criminal, (MAI–CR) 15.00 mandate that in every first degree murder case an instruction on conventional manslaughter must be given.[2] It is specifi-

cally stated that in every such case there is evidence to support such a submission. MAI–CR 15.00.3 Caveat c. In resolving this problem, we believe some history of the requirement of "instructing down" is necessary.

As early as 1876[3] it was recognized in Missouri that it was the duty of the trial court to instruct the jury on the law and that duty included the obligation to instruct only on the degree or degrees of homicide established by the evidence. *State v. Love*, 64 Mo. 319 (1876); *State v. Jones*, 64 Mo. 391 (1877). The doctrine was accepted by the United States Supreme Court in *Sparf v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895) and *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). In the former case it was recognized that the determination of whether there is any evidence to support a lesser offense is initially one of law for the court. Whether that evidence is sufficient is a question of fact for the jury. The reason for this approach was stated as follows:

"A verdict of guilty of an offense less than the one charged would have been in flagrant disregard of all the proof and in violation by the jury of their obligation to render a true verdict. There was an entire absence of evidence upon which to rest a verdict of guilty of manslaughter or of simple assault. A verdict of that kind would have been the exercise by the jury of the power to commute the punishment for an offense actually committed, and thus impose a punishment different from that prescribed by law." *Sparf v. United States, supra*, l.c. 64, 15 S.Ct. at 278.

Further:

"Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be. Under any other system, the courts, although established in order to declare the law,

2. The same is true of MAI–CR2d 15.00.

3. Possibly as early as 1842. *See Hardy v. State*, 7 Mo. 607.

would for every practical purpose be eliminated from our system of government as instrumentalities devised for the protection equally of society and of individuals in their essential rights. When that occurs our government will cease to be a government of law, and become a government of men. Liberty regulated by law is the underlying principle of our institutions." *Sparf v. United States, supra,* l.c. 102, 103, 15 S.Ct. at 293.

It was the rule in Missouri, at least as recently as 1975, that the trial court was not required to instruct on lesser degrees of homicide unless there was evidence to support such an instruction. This was true whether the case was circumstantial or direct. *State v. Crow,* 486 S.W.2d 248 (Mo. 1972); *State v. Terry,* 472 S.W.2d 426 (Mo. banc 1971). It was recognized that the circumstances of the killing could be such as to establish as a matter of law the existence of all mental elements of the crime, including deliberation. *State v. Terry, supra,* [10–12]; *State v. Crow, supra,* [13]. Indeed, the first degree murder statute in force in Missouri until 1975 specifically described three types of murders (poisoning, lying in wait and felony-murder) where proof that the killing occurred in the described way established deliberation as a matter of law. Sec. 559.010, R.S.Mo.1969. The fact question for the jury in those cases, and in others in which deliberation was established as a matter of law, was whether defendant committed the act. It was not necessary for the jury to determine the mental state of the defendant.[4] A change in this concept began to emerge presaged by *State v. Williams,* 442 S.W.2d 61 (Mo. banc 1968). That case recognized that there existed only one definition of manslaughter in this state, that contained in what is now Sec. 565.005 R.S.Mo.1978. In *Williams, supra,* it was held that there existed a presumption that the intentional killing of a human being was second degree murder and an instruction on manslaughter required "proof of facts tending to show want of premeditation and malice . . . ." l.c. [4–6].

*State v. Williams, supra,* was overruled in *State v. Ayers,* 470 S.W.2d 534 (Mo. banc 1971). *Ayers,* referring to *Sparf, supra,* reemphasized the obligation of the court to instruct the jury on the law, but then held that the intentional killing of a human being was manslaughter and was not presumed to be second degree murder. If in addition the elements of premeditation and malice are shown, the offense becomes murder second degree. If in addition deliberation is shown, the offense becomes murder first degree. The court reaffirmed its prior positions that if the evidence established as a matter of law " 'an entire absence of evidence upon which to rest a verdict of guilty of manslaughter,' the trial court could properly have instructed only as to murder in the second degree." [7]. In *Ayers,* the court found that the evidence would support either manslaughter or second degree murder and an instruction on manslaughter was required. In essence, *Ayers* precluded placing the burden of proof upon defendant to introduce evidence to reduce the crime to manslaughter. The burden to establish the elements of premeditation, malice and deliberation were placed upon the State. The United States Supreme Court thereafter held that due process requires that the prosecution assume the burden of establishing each element of the crime, and that placing the burden upon defendant to produce evidence to reduce the crime violated due process. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *Ayers* was fully compatible with *Mullaney.* Neither held that regardless of what the circumstances established, the jury was required to pass upon the mental state of defendant.

Following *Ayers,* the Supreme Court again reaffirmed its holding in *State v. Crow, supra,* and *State v. Terry, supra,* that

---

4. The discussion of "instructing down" in this opinion does not deal with the mental state determinations required of a jury where (1) mental disease or defect excluding responsibility (Sec. 552.030.4 R.S.Mo.1978) (2) diminished capacity (Sec. 552.030.3(1) R.S.Mo.1978) or (3) voluntary intoxication (Sec. 562.076 R.S.Mo. 1978) are involved. All three require submission of the issue only if supported by evidence. MAI–CR2d 2.30, 3.30.2, 3.74.

where the evidence compels an inference of deliberation no instruction on a lesser degree of homicide is required. *State v. Johnson*, 505 S.W.2d 94 (Mo.1974). In *State v. Stapleton*, 518 S.W.2d 292 (Mo. banc 1975), the court interpreted *Ayers* to mean that "when there is evidence sufficient to submit second degree murder, there is automatically evidence sufficient to submit manslaughter and that it is the function of the jury to decide whether the defendant acted with premeditation and malice." [3]. Despite this apparent new interpretation of the law, the court still distinguished *Crow* and *Terry*, pointing out that *Stapleton* and *Johnson*, *supra*, both were circumstantial evidence cases. In a footnote in *Stapleton* the court called attention to its amendment on that day of MAI–CR to require instructing down to manslaughter in all murder cases, except felony-murder.

Prior to January 13, 1975, there was no requirement that lesser degrees of homicide be instructed upon unless there was evidence to support such an instruction. *See* cases heretofore cited and Mo. Bar Comments on MAI–CR, Lesser Graded or Included Offenses, VII B. 4. This was true of both conventional murder and felony-murder. The effect of *Stapleton* and the MAI–CR amendment was to change this to require "instructing down" regardless of evidentiary support.[5] The January 13, 1975, amendment as mentioned required instructing down, whether evidentiary support existed or not in conventional murder but not in felony-murder. In fact, in caveat (a) to Notes On Use MAI–CR 6.02 it was stated:

"Ordinarily, where there is sufficient evidence to warrant the giving of a felony-murder instruction, there will be *no evidence* to support the submission of a lesser offense. Under such circumstances only felony-murder will be submitted. . . . (Citations omitted) . . . . (Emphasis added).

"There may be exceptional cases, however, where there is evidence warranting a finding that the murder was not committed in the perpetration of or attempt to commit the felony relied upon to authorize a felony-murder instruction. In such case an instruction must be given as to any lesser offense supported by the evidence."

In September 1975, following the adoption of the new homicide statute, MAI–CR was amended to require an instruction on conventional manslaughter to be given where any higher homicide offense, "conventional or felony-murder, is submitted to the jury." MAI–CR 6.02 Notes On Use 4. c.2 *See* specifically as to arson, MAI–CR 6.15, Notes On Use 5. The justification for this change was listed as *Williams*, *Ayers*, and *Stapleton*. This change was apparently one of procedure for in *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976) the court upheld a conviction against an attack that no manslaughter instruction had been given. There the court expressly reaffirmed its prior decisions of *State v. Holland*, 354 Mo. 527, 189 S.W.2d 989 (1945) and *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972) holding no second degree homicide instruction was required where there was no evidence to support it. On motion for rehearing, the Court acknowledged the Notes On Use, MAI–CR 6.02, but held they applied only to cases tried after March 1, 1975.

New homicide instructions became effective on April 12, 1978, for homicides committed after May 25, 1977.[6] Again these instructions require an instruction on conventional manslaughter in any first-degree murder case (felony-murder). They also require conventional second degree murder and conventional manslaughter be given in any capital murder case.

---

**5.** This change was apparently based upon the concept enunciated in *Ayers, supra*, that the burden of establishing each element of the offense rests on the prosecution. It is at least questionable that so placing that burden carries the corollary proposition that mental state is therefore always a question of fact, no matter how undisputed the circumstances of the killing.

**6.** May 26, 1977, was the effective date of the new capital murder and first degree murder statutes. Secs. 565.001 and 565.003, R.S.Mo. 1978.

In view of the above history, it is not precisely clear why instructing down is mandatory. Even after *Stapleton,* the court recognized it was not required as a matter of substantive law in the absence of evidence. *State v. Franco, supra.* And, *see,* Sec. 556.046 R.S.Mo.1978 which provides that instructing down is not required unless "there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *See also* Sec. 565.006 R.S.Mo.1978 which precludes the court in a capital murder case from instructing "on any lesser included offense which could not be supported by the evidence presented in the case." [7]

Two recent cases give some indication of the reason. In neither *State v. King,* 577 S.W.2d 621 (Mo. banc 1979) nor *State v. Holt,* 592 S.W.2d 759 (Mo. banc 1980) did the court explain the evidentiary base upon which a jury could find a lack of deliberation or lack of premeditation or malice. In the former case the killing was in the nature of an execution, in the latter the defendant hired someone to kill his wife. In both cases the defense was that defendant did not do it. How it is possible to find lack of deliberation, premeditation and malice where one person hires another to kill a third person is not explained in *Holt.* In *King,* the court required instructing down because MAI–CR 6.02 required the jury to find the requisite mental states and its failure to do so could have resulted in acquittal even if the jury believed defendant in fact was the killer. This presumes, of course, that even in a case where the mental elements are established by the circumstances as a matter of law, the jury must still find those elements. Of more significance is the court's statement:

"Another function it [instructing down] performs is that it recognizes the broad power reposed in juries by our society." l.c. 623.

In *Holt,* this approach was amplified in the following language:

"Whatever the reason the jury had a right to convict on either the capital murder or second degree murder charge, provided there was evidence before the jury to support such a conviction. . . .

" . . . Hence, not finding appellant guilty of capital murder does not foreclose a finding of the necessary intent for second degree murder, conviction of which would permit the jury more flexibility as to punishment. If the jury decides to be lenient under these circumstances, it does not mean it is being inconsistent or that its verdict is without factual basis." 592 S.W.2d p. 764.

■ It is apparent that *King, Holt,* and the MAI–CR and MAI–CR2d establish a new policy of giving the jury in a homicide case [8] the unfettered right to commute the punishment for an offense actually committed and to impose the punishment it finds proper. It is not our function or purpose to question this policy, it is our function and purpose only to apply it.

*Handley, supra,* teaches however that this right is not so unfettered as *King* and *Holt* make it appear. If an acquittal of the higher degree of crime necessarily requires a factual finding that is also necessary for a finding of guilt of the lesser crime, the acquittal serves to preclude conviction of either. The dissenting opinion of Rendlen, J. in *Handley, supra,* takes the position that acquittal of the higher offense and an inconsistent verdict on the lesser count does not mandate reversal of the conviction on

7. This wording replaced language in the 1977 law which required the jury to determine the degree of homicide involved. No reference to the evidence was in the original 1977 law. Sec. 565.006 R.S.Mo.1978. To the extent the MAI–CR requirements may have been based upon the 1977 law they are inconsistent in requiring only "conventional" murder second degree and "conventional" manslaughter in a capital murder case (MAI–CR 15.00, Supplemental Notes On Use, 3 Caveat c) whereas the statute refers

also to first degree murder as a lesser included offense. In addition, that statute applied only to capital murder cases, not first degree murder cases.

8. This policy does not apparently apply to other crimes where "instructing down" requires evidentiary support. *See* MAI–CR2d 17.00 Supplemental Notes On Use 5d, MAI–CR2d 19.02 Notes On Use 4 & 5.

the lesser count. The inconsistency exists, of course, only because MAI–CR and MAI–CR2d require the trial court to instruct on an offense for which the defendant could not be convicted. The difference in the role of the jury as enunciated in *Handley* vis-a-vis *Holt* and *King* appears to be as follows. In the former the jury finding of not guilty on the higher offense necessarily involved a factual determination which precluded guilt on the lesser charge. In *Holt* and *King* the jury finding of an absence of deliberation, albeit impossible under the evidence, did not constitute a fact finding inconsistent with conviction of the lesser offense which does not require that element.

With this background, we turn to first degree murder. It can be acknowledged that in many, maybe most, felony murders it is possible for the defendant to be not guilty of first degree murder and still criminally responsible for some lesser homicide. This is because the jury may be able to find that the defendant killed the victim by an intentional act but was not at the time engaged in a felony.[9] Under the felony-murder law (Sec. 565.003 R.S.Mo. 1978) the commission of a designated felonious act which results in the death of a human being establishes the offense whether an intent to kill exists or not. There are many situations where the defendant can be criminally responsible for the homicide only if he in fact committed the underlying felony. *Handley, supra,* demonstrates this situation with the aider and abettor. It is also true where the death results from an auto accident during escape, *State v. Morgan,* 592 S.W.2d 796 (Mo. banc 1980), *State v. Jasper,* 486 S.W.2d 268 (Mo. banc 1972); where the killing is done by a bystander attempting to thwart the felony, *State v. Moore,* 580 S.W.2d 747 (Mo. banc 1979); or where a fireman dies while fighting an arson caused fire, *State v. Glover,* 330 Mo. 709, 50 S.W.2d 1049 (1932). The same situation would presumably arise if a victim of a felony died from a heart attack during the commission of and as a direct result of that felony, or if a young girl died from vaginal bleeding as a result of rape. It is particularly true in arson cases where the death is the result of the fire and defendant had no intent to kill and may be unaware that anyone is even present in the building. In none of these cases can the defendant be guilty of conventional manslaughter.[10] If the killing does not result from the intentional felonious act of defendant an acquittal of first degree murder necessarily requires an acquittal on manslaughter because there is no other charged conduct of defendant which caused the death. So it is here. Defendant was, under the evidence, responsible for the death of Ms. O'Brien only if she started the fire which caused Ms. O'Brien's death. The jury acquitted her of first degree murder which necessarily meant they either found she did not intentionally start the fire or that the fire did not cause the death. In either case, the acquittal served to exonerate defendant from liability for the death of Ms. O'Brien. Based upon *Handley,* we must conclude that, despite the mandate of MAI–CR, the defendant could not be convicted of manslaughter. *Handley, supra,* declares the substantive law. MAI–CR was apparently treated as procedural in *Handley,* and certainly in *Franco, supra.*[11] As

---

9. In that case, a conventional second degree murder instruction would normally be required. MAI CR 15.00, Notes On Use 3 e requires such an instruction *if supported by evidence.* The plurality decision in *Handley* holds that such an instruction cannot be given. Under MAI–CR there is apparently some basis for always finding a defendant guilty of manslaughter where the killing is found by the jury not to have been the result of the commission of a felony.

10. In some culpable negligence manslaughter might be supported, but that instruction is not the manslaughter instruction mandated and in fact is prohibited. *See* MAI CR2d 15.20 Notes On Use 5.

11. Art. V, Sec. 5, Mo.Const. grants the Supreme Court rule making authority but precludes its use to change substantive rights. Whether, as a matter of law, a defendant can be convicted of a given crime is a matter of substance not procedure. MAI–CR and MAI–CR2d are products of the Supreme Court's rule making authority. They cannot make criminal that which is not. Requiring submission of a crime for which defendant cannot be convicted may be a proper procedure, but upholding or reversing a conviction based upon such a submission is a question to be determined by substantive law, not by procedure.

such, MAI–CR cannot be used as a basis for concluding that in every felony-murder there is an evidentiary base to find manslaughter. Although that conclusion is stated in MAI–CR and MAI–CR2d, *Handley* clearly recognized it was not true. The *Handley* conclusion is compatible with the law as it has existed in this state for years.

Judgment reversed and defendant ordered discharged.

SATZ, J., concurs.

ALDEN A. STOCKARD, Special Judge, concurs in result.