James A. LOVE, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 65337.

Supreme Court of Missouri,
En Banc.

May 15, 1984.

Rehearing Denied June 19, 1984.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for movant-appellant.

John Ashcroft, Atty. Gen., Charles E. Smarr, Jay D. Haden, Asst. Attys. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

GUNN, Judge.

Movant appeals the denial of post-conviction relief in this Rule 27.26 proceeding. Movant was convicted by a jury of two counts of second degree murder. Section 559.020, RSMo 1969 (now § 565.004, RSMo 1978, repealed effective July 1, 1984 by

Laws 1983, p. 923).[1] These convictions were affirmed on direct appeal. *State v. Love*, 546 S.W.2d 441 (Mo.App.1976). Movant then instituted this proceeding under Rule 27.26 to set aside the convictions and obtain a new trial, alleging that his defense counsel rendered ineffective assistance, primarily by reason of the omission of a manslaughter instruction. After an evidentiary hearing on the motion, the trial court denied the requested relief. The Western District affirmed the judgment of the trial court. However, the appeal was transferred to this Court by certification of a dissenting judge. Rule 83.01. We consider this case as on original appeal, Rule 83.09, and affirm.

The evidence presented at movant's trial will be outlined more fully in the discussion which follows. A detailed statement of the facts is given in the opinion on direct appeal. *State v. Love, supra.* For present purposes it is sufficient to note that the two young victims were found, one dead and one dying, with their throats slashed. Movant was identified with the crime on the basis of circumstantial evidence, and the jury could reasonably have concluded that he was the assailant. Movant took the stand to deny any connection with the killings. The jury was instructed solely on the offense of second degree murder in both instances. A manslaughter instruction was neither requested nor given.

The nub of movant's claim is that the trial court was required, by the applicable MAI–CR Notes on Use, to submit a manslaughter instruction, whether requested or not, and that the failure to do so constituted grounds for a new trial. Proceeding from this contention, movant postulates that his defense counsel was ineffective in any one of the following three respects: failing to request a manslaughter instruc-

tion; failing to raise the instructional error in his motion for new trial; and failing to raise the omission as "plain error" on appeal. Movant therefore contends that he should be afforded a new trial.

■ In order to prevail, movant is required to demonstrate "that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby." *Wilson v. State*, 626 S.W.2d 243, 245 (Mo. banc 1982), *quoting Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). Each of the three asserted faults of movant's defense counsel will therefore be reviewed under this standard, with the constant focus of this appeal on the issue of effective assistance of counsel.

The first instance of charged ineffectiveness is the failure of counsel to obtain a manslaughter instruction as an alternative to the submission of second degree murder. The record in this proceeding indicates that counsel made a conscious decision not to request a manslaughter instruction. At the hearing on the motion, he stated that he did not request the instruction because he did not want to confuse the jury with an instruction which was inconsistent with the theory of defense—that movant was totally innocent of the killings. Furthermore, he perceived that to argue manslaughter would have been to acknowledge that defendant had been involved in the killings, and he wanted him nowhere near the site of the crime at the time of the attack.[2]

Movant, however, contends that counsel could not have made such a conscious tactical decision, as his attorney also stated that it was his opinion that manslaughter was not submissible under the evidence. However, it is not important whether counsel's

---

1. The effective date would be extended to October 1, 1984 by S.B. 448 of the 82nd General Assembly, which at the time of this writing has been finally passed and awaits the Governor's signature.

2. The record on appeal in this Rule 27.26 proceeding relates movant's trial counsel's conscious rejection of a manslaughter instruction.

When asked why he did not request the instruction, he testified,

"I didn't request it because I didn't want it"

. . . .

"I didn't want to argue manslaughter because for me to argue manslaughter I would have had to put Jim Love in the apartment."

decision was simply a matter of strategy based upon a reasonable awareness of applicable law or whether it was the product of an uninformed notion that no alternative was available. The test to be applied is whether a reasonably competent attorney would have performed differently under similar circumstances. *Id.*

The pertinent circumstances were that the evidence was strong with respect to the killer's murderous intentions but weaker with respect to the culprit's identity. Placed in the same situation, a reasonably competent attorney could have concluded that it was in the best interest of his client to deny the jury the opportunity to compromise on some middle ground between second degree murder and acquittal. *See State v. Lee,* 654 S.W.2d 876, 879 (Mo. banc 1983) (recognition of proper trial strategy of counsel to elect not to request instruction on lesser degree of homicide).

 An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel. *McClain v. State,* 560 S.W.2d 894, 896 (Mo.App.1978). Further, the reasonableness of employing an all-or-nothing strategy in a homicide prosecution is not affected by the failure of the jury to acquit. *Riley v. Lockhart,* 726 F.2d 421 (8th Cir.1984). Obviously, then, movant's counsel cannot be convicted of being ineffective for seeking to employ the best defense for his client by not offering the jury a middle ground for conviction. A manslaughter instruction would not benefit the movant. An offer of such an instruction would be out of phase with trial strategy, which was

that defendant was innocent of anything— not that the homicides were manslaughter.

The second instance of claimed ineffectiveness is the failure to raise the lack of a manslaughter instruction in the motion for new trial. Fully stated, movant's argument is that reasonably diligent counsel would have been aware that the trial court's failure to submit manslaughter with second degree murder constituted grounds for a new trial and that such failure could be raised in the first instance in the motion for new trial. Thus, movant contends that his counsel's failure to raise the omission of the manslaughter instruction in the motion for new trial constituted ineffective assistance of counsel.

 Movant is correct that the failure to give a lesser offense instruction in a homicide case may be raised in a motion for new trial, even without a request for the instruction or an objection to its absence at the time of trial. Section 546.070(4), RSMo 1978 (amended effective July 1, 1984 by Laws 1983, p. 923);[3] *State v. Johnson,* 505 S.W.2d 94, 95 (Mo.1974); Rules 28.02(a), 28.03; *cf. State v. Olson,* 636 S.W.2d 318, 322 (Mo. banc 1982) (creating a different standard for non-homicide offenses).[4]

It is also certain that had the absence of a manslaughter instruction been raised in the movant's motion for new trial, the trial court, if following our decision in *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975),[5] would necessarily have granted a new trial. Otherwise, the case would have been reversed and remanded for a new trial. *See State v. Flenoid,* 617 S.W.2d 75 (Mo. banc 1981). But, again turning to the cynosure of this appeal, the pertinent issue

3. The effective date would be extended to October 1, 1984 by S.B. 448 of the 82nd General Assembly, which at the time of this writing has been finally passed and awaits the Governor's signature. (See footnote 1.)

4. Of course, a different situation might have transpired had the court tendered a manslaughter instruction which defendant then explicitly refused. This would have resulted in a binding waiver upon defendant, negating any claim that counsel was ineffective in failing to submit the instruction. *See Mercer v. State,* 666 S.W.2d 942 (Mo.App.1984). But inasmuch as a manslaugh-

ter instruction was never tendered, the express waiver issue does not arise.

5. The rule of *Stapleton* is repealed by legislative action. Section 565.025(3), RSMo Cum.Supp. 1983 (effective Oct. 1, 1984) (see footnotes 1 and 3). The automatic submission of both second degree murder and manslaughter was also required for cases submitting what was then known as first degree murder, § 559.010, RSMo 1969. The legislature repealed § 559.010 in 1975. *See* Laws 1975, p. 408.

is whether movant's counsel, or any counsel, should be branded as ineffective for failing to take advantage of the omission of an instruction by the trial court which was not presented to it for its consideration.

■ We have concluded that a reasonable attorney could have decided that a manslaughter instruction would have been detrimental to his client. But it is also true that a manslaughter instruction was required by the then applicable law. Although not compelled, an attorney is under an ethical admonishment to disclose legal authority which is contrary to his position and to refrain from misleading the court into unwarranted action by any artifice or concealment. *State ex rel. A.M.T. v. Weinstein*, 411 S.W.2d 267, 274–75 (Mo.App. 1967); Rule 4, EC 7–23. Are we then to say that counsel is necessarily ineffective for failing to raise error which resulted from a legally correct, although ethically questionable, decision to avoid discussing the applicability of a certain instruction? To do so would be to compel the practicing bar to engage in the ritual of "sandbagging" the court or bear the brand "ineffective." This should not be the rule in Missouri.

■ There is yet another reason why the trial court's rejection of this second charge of ineffectiveness must stand. In order to demonstrate prejudice under the *Seales* test, *supra*, "[m]ovant must demonstrate that any omission by his attorney resulted in prejudice to his position and deprived him of substantial rights." *Careaga v. State*, 613 S.W.2d 863, 867 (Mo. App.1981). In this regard, the pertinent inquiry is whether the omission had a material effect on the outcome of the trial which is deleterious to the movant. *Cox v. Wyrick*, 642 F.2d 222, 226 (8th Cir.1981). In this case, the trial court found that movant was not prejudiced by his counsel's failure to assert the instructional error, and on review, the trial court's judgment must be affirmed unless this finding is clearly erroneous. Rule 27.26(j). Close analysis of the record reveals that the finding was not clearly erroneous.

With respect to the seriousness of the homicides of which movant was convicted, it is clear that movant did not suffer material prejudice as a result of his counsel's failure to obtain a new trial. In any new trial resulting from an allegation of error in the instructions, it must be assumed that the jury would be instructed correctly. Briefly reviewing the evidence, it is apparent that if the jurors believed movant was the young victims' assailant, they would also believe that movant was guilty of second degree murder and not manslaughter. This same conclusion would apply to any new trial involving the same killings.

■ The evidence showed that the fourteen-year-old victim had struggled before she was killed. She had received multiple wounds, including puncture wounds on her right side and bruises on her right thigh. The two and one-half year old victim had also received multiple wounds about the head and face. Under the applicable MAI–CR instruction, the jury needed only to find that movant intended to cause the deaths, and that movant did not act in anger, fear or agitation "suddenly provoked by the unexpected acts or conduct of" the victims. MAI–CR 6.06 (Murder: Second Degree). There was no evidence in either the first trial or in the hearing on the motion which might possibly have convinced the jury to reject second degree murder and convict movant of manslaughter. *See Kurtz v. State*, 645 S.W.2d 7, 9 (Mo.App.1982) (no showing that movant was prejudiced by counsel's failure to obtain a new trial based on omission of manslaughter). It is also clear that the jury at movant's trial was thoroughly convinced of movant's guilt on the murder charge in light of their recommendation that he be sentenced to 150 years for each offense. Certainly, the recommended punishment belies any indication that the jury would avail themselves of the opportunity to convict of a lesser offense and accordingly assess a less severe punishment. Thus, movant could not have been prejudiced by the denial of a new trial at which both second degree murder and manslaughter would be submitted. The

mere omission of the manslaughter instruction in this instance does not afford implication of such prejudice that would nullify movant's conviction or demonstrate ineffective assistance of counsel. *Hanson v. State*, —— S.W.2d —— (No. 13200, Mo.App. S.D., March 26, 1984); *Kurtz v. State*, 645 S.W.2d at 9.

Furthermore, there is no reason to believe that movant was deprived of a significant opportunity of acquittal by the failure of his counsel to obtain a new trial. The evidence linking movant to the crime, although circumstantial, was compelling.

With respect to the third claim of ineffective assistance—the failure to raise the omitted instruction as plain error on appeal—the trial court's finding that no material prejudice resulted from this failure is also not clearly erroneous. It follows that if no prejudice resulted from the failure to obtain a new trial by motion, then no prejudice resulted from the failure to obtain a new trial on appeal.

■■■ A trial court should not be obliged to grant a new trial on a claim of ineffective assistance of counsel unless there is a reasonable possibility that competent counsel could have obtained a different result. *See Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426, 438 (1978). Nor should this Court feel compelled to grant a new trial unless the finding that no such possibility existed was clearly erroneous. On the present record, no such error appears.

The judgment denying movant's requested relief is affirmed.

RENDLEN, C.J., concurs.

BILLINGS, J., concurs in separate opinion filed.

HIGGINS, J., concurs and concurs in separate concurring opinion of BILLINGS, J.

GUNN, J., also concurs in separate concurring opinion of BILLINGS, J.

BLACKMAR, J., concurs in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of WELLIVER, J.

BILLINGS, Judge, concurring.

I fully concur in the principal opinion and write in an effort to demonstrate *State v. Stapleton*, 518 S.W.2d 292 (Mo. banc 1975), was ill-conceived and it and its progeny should be squarely overruled.

*Stapleton* announced the automatic submission rule in homicide cases [1] and substantially altered the law of manslaughter in the process. It has been stated by another distinguished jurist [2] that it is more important for a court to be correct in its decisions than it is to be consistent. Accordingly, I believe the automatic submission rule should be cast aside and pre-*Stapleton* standards applied in the submission of manslaughter in Missouri.

The standard for reviewing defendant's claim was announced in *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979):

> In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney failed to exercise the *customary skill and diligence* that a *reasonably competent attorney* would perform under *similar circumstances*, and that he was *prejudiced thereby*. (emphasis added)

Thus, to substantiate his claim in the instant case defendant must prove "material

---

**1.** The automatic submission rule requires that (1) an instruction on manslaughter must be given when any higher homicide offense is submitted, and (2) a conventional second degree murder instruction must be given in all cases in which the court instructs on capital murder. *See* Venker, *Missouri Homicides: Lesser Included Offenses and Instructing Down*, 48 Mo.L.Rev. 935, 959 n. 130–31 (1983). Criticism of the

automatic submission rule in this opinion is limited to the rule's application with respect to manslaughter instructions.

**2.** *See Liddell v. Missouri*, 731 F.2d 1294 at 1331 (8th Cir.1984) (Gibson, J., concurring in part and dissenting in part).

prejudice" from his trial counsel's errors. *See Langston v. Wyrick,* 698 F.2d 926, 930 (8th Cir.1982). Failure to prove prejudice, is by itself, enough for a court to deny an ineffective assistance of counsel claim. *Harkins v. State,* 653 S.W.2d 255, 256 (Mo. App.1983). Assuming, arguendo, that counsel failed to exercise that degree of skill and diligence as would a reasonably competent attorney under similar circumstances, I cannot agree that defendant carried his burden. He argues that counsel should have requested a manslaughter instruction at trial and having failed to do so counsel should have raised the issue in a motion for new trial and on appeal.

Under *Stapleton* defendant was automatically entitled to a manslaughter instruction. The cases following *Stapleton* indicate that had counsel included the issue in a request for a new trial it is likely that relief would have been granted.[3] However, I submit *Stapleton* is based upon faulty logic and a misunderstanding of Missouri homicide law.[4] It is apparent from a review of the facts in the instant case and an enlightened view of Missouri's homicide law that a manslaughter instruction should not have been given because it was not supported by the evidence. Accordingly, any request for a new trial, if made, should have been denied. It cannot be said, there-fore, that defendant was prejudiced by counsel's actions in the instant case.

Manslaughter is an intentional killing without malice and premeditation that is neither justifiable nor excusable. *See State v. Sturdivan,* 497 S.W.2d 139, 142 (Mo.1973).[5] In *State v. Williams,* 442 S.W.2d 61 (Mo. banc 1968), and earlier cases,[6] we held that if the state established an "intentional killing of a human being by another where a deadly weapon is used by him at a vital part of the body," a presumption arose that the killing was done with malice. *Id.* at 64. This presumption of second degree murder is consistent with the traditional view at common law.[7]

Under the traditional view the state had the initial burden to show that the defendant intentionally killed the victim. If the state met this burden, a presumption arose that the killing was done with malice and a second degree murder instruction was warranted. In order for the defendant to receive a manslaughter instruction he had to rebut the presumption of malice by producing evidence of mitigating or extenuating circumstances, referred to as *adequate provocation,* surrounding the intentional killing.

Prior to *State v. Williams,* in order to show adequate provocation by the victim,

---

3. *But see State v. Kurtz,* 564 S.W.2d 856, 862 (Mo. banc 1978) (finding no plain error on direct appeal where the trial court failed to follow that automatic submission rule).

4. For earlier criticism of *Stapleton,* see *State v. Martin,* 602 S.W.2d 772, 774–80 (Mo.App.1980).

5. The statutory definition of manslaughter has remained relatively unchanged in Missouri since 1919. *See* Venker, *Missouri Homicides: Lesser Included Offenses and Instructing Down,* 48 Mo.L.Rev. 935, 942–43 (1983). At the time of defendant's trial, the statutory definition of manslaughter provided: "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." § 565.005, RSMo 1978. This section is effective until July 1, 1984 when it is repealed and replaced by § 565.023, pursuant to S.B. 276 (1983). The new manslaughter statute provides: "A person commits the crime of voluntary manslaughter if

he: (1) Causes the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he causes the death under the influence of sudden passion arising from adequate cause; or (2) Knowingly assists another in the commission of self-murder." Under this new scheme it is clear that there must be evidence of provocation before an instruction on voluntary manslaughter is submitted. *See* § 565.023.2, RSMo (Cum. Supp.1983). *See also* Venker, *supra* at 978–81.

6. *See* Note, *Criminal Law—Instructing on Manslaughter—Eliminating the Presumption of Malice in Missouri Homicide Cases,* 38 Mo.L.Rev. 105, 106 n. 8 (1973) (collecting cases between 1856 and 1968 on the presumption of malice).

7. *See* Note, *Criminal Law—The Abolition of the Presumption of Malice and Second Degree Murder,* 34 Temp.L.Q. 336 (1961) (discussing the historical development of the presumption of malice at common law).

the defendant had to introduce evidence of physical violence to his person; mere proof that the defendant feared the victim was not sufficient provocation.[8] *Williams* broadened the definition of adequate provocation by eliminating the requirement of physical violence to defendant's person. However, *Williams* did not alter the presumption of malice arising from a showing that the killing was intentional. Thus, absent substantial evidence of adequate provocation in the case, an instruction on manslaughter was not proper. 442 S.W.2d at 64.[9]

In *State v. Ayers*, 470 S.W.2d 534 (Mo. banc 1971), we stated that the trial court could instruct on second degree murder and not manslaughter only if it found as a matter of law, "an entire absence of evidence upon which to rest a verdict of guilty of manslaughter." *Id.* at 538. *Ayers* continued to recognize the common law presumption of malice but stated that it could be rebutted in a particular case due to the evidence.[10] Under *Williams* the defendant had the proof of facts burden of constructing a scenario of provocation or heat of passion to prove he was entitled to a manslaughter instruction. *Ayers* relieved the defendant of this burden and made it the *trial judge's duty to determine if the issue of adequate provocation arose and if so to instruct on manslaughter.* However, it is important to note that under the *Ayers* standard "[m]any cases will lack evidence warranting a manslaughter instruction." Venker, *supra*, 48 Mo.L.Rev. at 969.

*Stapleton* abolished the long standing presumption of second degree murder in Missouri and announced the automatic submission rule for manslaughter.[11] However, the holding in *Stapleton* is based upon questionable reasoning and a serious misunderstanding of our earlier decisions.

*Stapleton* stated that *Ayers* held that the trial court is required to submit manslaughter in second degree murder cases even though there is no evidence of lack of malice or premeditation—no evidence of provocation. 518 S.W.2d at 300. *Stapleton* reasoned: "*Ayers* requires this because it is the jury's function to decide the fact question of whether the defendant acted with premeditation and malice and that fact question does not exclusively depend upon the existence or nonexistence of provocation." *Id.* Clearly, this is not the holding in *Ayers.* Paul Venker, in his scholarly article explains:

> *Stapleton* truly abolished the presumption of second degree murder ... *Stapleton* cannot be said to have properly relied on *Ayers* for this result. *Ayers* cut the ties to common law manslaughter and only required a trial judge to determine whether as a matter of law a juror could find from the evidence in the record that the defendant was of such an excited and impassioned state of mind that he did not possess the malice and premeditation necessary for murder. *Stapleton* was an extension of *Ayers* which misconceived the substantive law

**8.** *See e.g., State v. Haynes,* 329 S.W.2d 640, 645–46 (Mo.1959).

**9.** In *Williams* the court stated that when the evidence was viewed in a light most favorable to the defendant, the jury could find that the victim suddenly shot at defendant at close range without warning and that defendant fired back without malice and certainly without deliberation and killed the victim. 442 S.W.2d at 64. The court reasoned that this was adequate provocation even though the victim's first shot missed the defendant and thus failed to inflict violence to his person.

**10.** In *Ayers,* evidence was produced indicating that the victim was a boyfriend of defendant's wife. The victim was found shot in his apartment. Witnesses testified they heard sounds

indicating a struggle in the victim's apartment and then two shots were fired. The defendant was seen leaving the victim's apartment with blood on his shirt. The court instructed on both second degree murder and manslaughter. The jury found the defendant guilty of manslaughter. The court in *Ayers* rejected defendant's contention on appeal that there was no evidence to support the manslaughter instruction. 470 S.W.2d at 537–38.

**11.** Amendments to MAI–CR were also made to reflect the holding in *Stapleton. See* MAI–CR 6.02, Notes on Use, p. 6–1c: MAI–CR 6.08, Notes on Use 5; MAI–CR 1500, Notes on Use 2, 3a and 3b.

of manslaughter and second degree murder as *Ayers* declared it.

48 Mo.L.Rev. at 970.

This misinterpretation of *Ayers* by *Stapleton* was soon recognized by this court in *State v. Mudgett*, 531 S.W.2d 275 (Mo. banc 1975), *cert. denied* 426 U.S. 910, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976). In *Mudgett* the court refused to apply *Stapleton* retroactively to require automatic instruction on manslaughter in homicide cases arising prior to the March 1, 1975 effective date of the automatic submission rule pursuant to MAI–CR amendments. The court in *Mudgett* noted:

> *Stapleton* construed *Ayers* to require that, where conventional murder instructions are supported by the pleadings and evidence and are given, there must be an *automatic* submission of manslaughter. This requirement has been in effect since March 1, 1975 (See MAI–CR 6.02, Caveats). This requirement was not instituted by *Ayers*. Any contrary implication from the language appearing in *Stapleton* is unfortunate if automatic submissions were made prior to March 1, 1975.
>
> \* \* \* \* \* \*
>
> The significance of *Ayers* lies only in its emphasis on 'the relative functions of judge and jury in a felonious homicide case,' and in its holding that it is the *duty* of the judge to instruct on lesser grades of homicide unless he can declare, as a matter of law, that there is no evidence to support such submission.

*Id.* at 281.

From the foregoing it is obvious that the automatic submission rule is a procedural rule promulgated by MAI–CR and *not* a rule of *substantive law* announced in *Sta-*

*pleton*. The defendant in the instant case urges us to treat the automatic submission rule as a substantive rule of law announced in *Stapleton*. Indeed, such a conclusion is primary to defendant's position that he was materially prejudiced. If *Stapleton* did have this effect, it did so only by seriously misstating the holding in *Ayers* and prior cases.[12]

Defendant cites several post-*Stapleton* cases granting relief on direct appeal where the trial court failed to follow the automatic submission rule. Defendant reasons that these cases support his contention that *Stapleton* mandates the automatic submission of manslaughter in all cases as a rule of substantive law. However, the contrary is evident upon examining *State v. Flenoid*, 617 S.W.2d 75 (Mo. banc 1981), the leading case referred to. In *Flenoid* the court explained:

> [C]ompliance with the seemingly clear instructions just noted [MAI–CR 15.18] would contribute more to the orderly administration of justice than have the efforts of this and other appellate courts to approve or disapprove of the absence thereof in specific cases.

*Id.* at 75. It seems evident that the court's decision rested upon MAI–CR and not the holding in *Stapleton*. Furthermore, the rationale is based upon administrative simplicity rather than considerations of prejudice to defendant caused by the failure to so instruct.[13]

In support of its decision, the court in *Stapleton* also relied upon the earlier case of *State v. Johnson*, 505 S.W.2d 94 (Mo. 1974). *Johnson* held that the trial court erred in not instructing on second degree murder in addition to first degree murder. *Johnson* stated that the principal differ-

**12.** Regardless, both the procedural mandate of MAI–CR and any substantive mandates in *Stapleton* requiring automatic submission of manslaughter should not be followed.

**13.** Even more telling is the decision in *State v. Kurtz*, 564 S.W.2d 856 (Mo. banc 1978), finding no manifest injustice under plain error review where the trial court failed to follow the automatic submission rule. In *Kurtz v. State*, 645 S.W.2d 7 (Mo.App.1982), the defendant next attacked the trial court's failure to instruct on manslaughter and his counsel's failure to raise the issue in a motion for new trial as grounds for post-conviction relief alleging ineffective assistance of counsel. Relief was denied on the basis that defendant did not prove prejudice from counsel's actions. *Id.* at 8–9. Neither of the preceeding holdings would be possible if *Stapleton* were truly a case of substantive law requiring automatic submission in *all* cases.

ence between first and second degree murder is the element of "deliberation" which is present in first degree. *Id.* at 95.[14] Noting that the case was based upon *circumstantial evidence*, the court in *Johnson* reasoned that the jury could infer deliberation from the evidence or reject that inference and find the evidence supported second degree murder. *Id.* at 95–96.

*Stapleton* tried to apply the *Johnson* analysis distinguishing first and second degree murder to the elements of malice and premeditation which distinguish second degree murder from manslaughter. The court in *Stapleton* reasoned:

> *Johnson* and the instant case are circumstantial evidence cases. The principal distinction between second degree murder and manslaughter is that the former requires a finding of intent to kill (premeditation and malice aforethought). If the accused intended to kill the deceased, then he is guilty of murder in the second degree (unless provocation prevents conviction of murder in the second degree). The intent to kill may be inferred from the circumstances. In *Johnson* the only evidence of deliberation was circumstantial. Here, the only evidence of intent to kill is circumstantial. The evidence authorized an inference of intent to kill but did not compel such a finding. If the jury did not find the element of intent to kill, then the defendant could still be guilty of manslaughter because manslaughter does not require that element.

518 S.W.2d at 300–01.[15]

*Stapleton's* attempt to apply the logic of *Johnson* to the distinction between second degree murder and manslaughter fails. Under *Stapleton* the jury is without any guidance in determining whether the de-

fendant had the requisite malice required for second degree murder. In *Johnson,* evidence of deliberation was required as a precondition to the jury receiving a first degree instruction. If the jury did not accept this evidence, it could find second degree murder. The same logic does not work when going from second degree murder to manslaughter because the latter requires evidence of *adequate provocation.* The presumption of malice exists whenever the state introduces evidence that the killing was an intentional one. The state meets this burden by showing that the killing was committed with a deadly weapon to a vital part of the body. The defendant must introduce evidence of mitigating circumstances, called adequate provocation, to rebut this presumption. The jury *is not free to accept or reject the inference of malice without such evidence.*

The absurdity and ultimate tragedy of the automatic submission rule is that it requires the giving of a manslaughter instruction even in cases like the present where it is clear that as a matter of law there is no evidence to support such a verdict. The court in *State v. Love,* 546 S.W.2d 441 (Mo.App.1976), affirmed defendant's convictions on direct appeal and summarized the murder scene:

> Finding no one in the living room, he [the father of the female baby-sitter] went into the kitchen area. There he observed the body of Jeffrey Berger lying in a pool of blood on the kitchen floor. *Jeffrey's throat was cut* and there were multiple wounds about his head and face. He also observed his daughter lying in a pool of blood on the kitchen floor to the right of Jeffrey Berger. *Sheilia's throat was also cut* and, in addition, she

---

14. "Deliberation is found when an act is performed with a cool and deliberate state of mind." *State v. Morris,* 639 S.W.2d 589, 591 (Mo. banc 1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

15. *Stapleton* interpreted the holding in *Johnson* to require that the trial court give a lesser homicide instruction in every "circumstantial-evidence" case. If *Johnson* so held, it overruled the earlier case of *State v. Cuckovich,* 485

S.W.2d 16, 26 (Mo. banc 1972). *Stapleton's* view of Johnson was clearly rejected by this Court in *State v. Franco,* 544 S.W.2d 533, 537 (Mo. banc 1976), which explained: "If *Johnson* was intended to mean that a trial court is required to give a lesser homicide instruction in a 'circumstantial-evidence' case, it must be overruled. The decision reached by the Court en Banc in *Cuckovich* may not be overruled by an opinion written in a Division of this Court."

had multiple wounds about the head and face, multiple 'puncture' wounds in her right side, and bruises on the right thigh. *Id.* at 444–45 (emphasis added). The court also noted that at the time of their deaths Jeffrey Berger was two and one-half years old and Sheilia Curtright was fourteen years old. *Id.* at 444.

*Stapleton* and the automatic submission rule require the jury to speculate as to how the homicide may have occurred and then arbitrarily determine defendant's mental state. The result is often shocking to concepts of justice.[16] In the instant case the state's evidence clearly showed an intentional killing committed by a deadly weapon used to cut the victim's throats. The traditional view is that such proof raises a presumption of second degree murder. The law prior to March 1, 1975, requiring some evidence of provocation before a manslaughter instruction was warranted. If the court declared an entire absence of evidence to support a manslaughter instruction, the instruction was not required. I believe that a return to such a standard is the correct decision and for that reason I would deny defendant's claim on the basis that he was not prejudiced by the failure of the trial court to instruct on manslaughter or the failure of counsel to raise the issue on appeal.

BLACKMAR, Judge, concurring.

I wholly concur in the principal opinion. I also agree with Judge Billings that "State v. Stapleton ... was ill conceived ...," that it is based on an unsound legal analysis, and that it and the cases following it should never have been engrafted on the jurisprudence of Missouri. I prefer to rest my concurrence on the reasons assigned by Judge Gunn in the principal opinion, because, under authority then controlling, the defendant could have had a new trial for the asking if the failure to give the manslaughter instruction had been included in the motion for new trial. If the trial court had not awarded this relief, it would have been forthcoming on appeal, as the cases cited in the principal opinion and in Judge Welliver's dissent demonstrate.

The dissent does not properly reflect the standards appropriate to a post-conviction proceeding. All our careful rules about the preservation of claims of error would go for naught if the identical issues could be presented in a proceeding under Rule 27.26, simply by asserting that counsel had demonstrated incompetence in the very failure to preserve the points. Rules for preservation of error are designed to promote orderly trials and appeals and to provide the means for prompt correction of errors. Their elimination would be subversive of our system of criminal procedure.

The principal opinion, then, is eminently correct in requiring that a person seeking post-conviction relief on claims of ineffective assistance of counsel bear the burden of demonstrating that "there is a reasonable possibility that competent counsel could have obtained a different result." It is not enough to show that a new trial could be had. The probable result is very important. The circuit court's finding that there was no prejudice is amply supported by the evidence. My study of the trial transcript persuades me, not only that the appellant was competently represented during the first trial, but also that a manslaughter conviction on retrial would be virtually impossible, and an acquittal highly unlikely.

The offense in the present case was committed on December 31, 1974. The opinion affirming the conviction was handed down December 27, 1976. The state's very thorough evidence is probably sufficiently preserved in the transcript, but the state's situation certainly would not be improved if it were required to retry the defendant at this late date. The delay factor demonstrates another reason why the defendant should have to bear a substantial burden when he now seeks a new trial on grounds

---

16. *See e.g., State v. Sager,* 600 S.W.2d 541 (Mo. App.1980), *cert. denied* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *State v. King,* 577 S.W.2d 621 (Mo. banc 1979).

**510**

which could have been advanced during the initial proceedings.

The judgment is properly affirmed.

WELLIVER, Judge, dissenting.

I respectfully dissent. Prior decisions of this Court leave us no alternative other than to reverse and remand this case for a new trial wherein the jury is instructed on manslaughter pursuant to the existing automatic submission rule. *See State v. Gordon*, 621 S.W.2d 262 (Mo.1981); *State v. Watts*, 618 S.W.2d 190 (Mo.1981); *State v. Flenoid*, 617 S.W.2d 75 (Mo. banc 1981); *State v. Lawrence*, 605 S.W.2d 98 (Mo. 1980); *State v. King*, 577 S.W.2d 621 (Mo. banc 1979); *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Mudgett*, 531 S.W.2d 275 (Mo. banc 1975), *cert. denied* 426 U.S. 910, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976); *State v. Stapleton*, 518 S.W.2d 292 (Mo. banc 1975).

The principal opinion concludes that there is no prejudice to the defendant in failing to submit the manslaughter instruction. The conclusion drawn is based solely upon an assumption of the truth of the conclusion, not upon the truth of a proven premise. How can anyone know whether or not it is prejudicial? There have been no other similar cases upon which to base either a premise or the conclusion reached by the majority.

The concurring opinion of Billings, J., persuasively demonstrates to me that *State v. Stapleton, supra*, and its progeny were wrongly decided. However, for the purpose of deciding the case before us we are bound to apply the law existing at the time of movant's original trial. There can be no doubt that *Stapleton* states the substantive law of this state as of June 1975 when movant was tried. Retroactively overruling *Stapleton sub silentio,* as the concurring opinion does, in my opinion runs contrary to any sense of fundamental fairness.

Assume for a moment that movant had a twin brother involved with him in the same crime and that the identically charged cases were severed for the purpose of trial. As in movant's trial, the jury in the brother's case is not instructed on manslaughter. Assume further that on direct appeal the case of movant's brother was consolidated with either *Stapleton, Mudgett, Franco, King, Lawrence, Flenoid, Watts* or *Gordon*. In the hypothesized situation, the twin brother's case would have been remanded for a new trial under the automatic submission of manslaughter rule. Notwithstanding this fact, the majority herein would deny movant's motion for post-conviction relief. Is this the kind of fundamental fairness and due process afforded by Missouri courts? I submit that it neither is nor should be. Our then controlling cases, whether rightly or wrongly decided, were the law at the time and mandate remand and retrial of this case.

It is extremely doubtful that there are any other cases of this vintage in the stream of appellate review. The changed statutes will take care of the future.[1]

---

1. § 565.023.2 RSMo Cum.Supp.1983.